■ In the Matter of the Claim of FRANCIS E. PHELPS, JR., Appellant, v JEFFREY PHELPS, Doing Business as PHELPS TREE SERVICE, Formally Known as PHELPS TREE PARAGON WIRE & CABLE CORPORATION, et al., Respondents. WORKERS' COMPENSATION BOARD, Respondent. [716 NYS2d 160] —Carpinello, J. Appeals from a decision and an amended decision of the Workers' Compensation Board, filed March 19, 1999 and September 13, 1999, which, *inter alia*, ruled that claimant was no longer

entitled to compensation because he voluntarily withdrew from the labor market.

In the course of his work as a tree foreman for his son's landscaping and tree service business, claimant injured his back, head, neck, face and mouth on June 21, 1991 and was awarded workers' compensation benefits at various temporary rates from that time, until they were temporarily suspended as of November 1996. By 1997, claimant was urging that he suffered from a permanent total medical disability such that he should be paid awards from July 1994 at the "total rate." The workers' compensation carrier in this matter—the State Insurance Fund (hereinafter the Fund)—was contrastingly urging that all benefits should be suspended retroactive to September 5, 1996 based on a video surveillance on that day of claimant engaging in sustained physical activity for his son's landscaping and tree service business. The Fund argued that the videotape, as well as photographs of claimant engaged in work, refuted any claim that he was significantly disabled or unable to partake in meaningful employment.

Following hearings between November 22, 1996 and July 18, 1997, a Workers' Compensation Law Judge determined that claimant was not entitled to ongoing benefits because he voluntarily withdrew himself from the labor market. He rejected the Fund's claim that he violated the newly enacted Workers' Compensation Law § 114-a (see, L 1996, ch 635, § 16), citing a failure of proof on the part of the Fund. Both the Fund and claimant appealed this determination to the Workers' Compensation Board (hereinafter the Board), following which the Board determined that claimant both voluntarily withdrew himself from the labor market and knowingly made false statements to insure continuation of benefits in violation of Workers' Compensation Law § 114-a. The Board disqualified claimant from receiving continued benefits directly attributable to the false statements and ordered him to reimburse the Fund for all benefits received after September 12, 1996 (totaling $2,181.48). In addition, the Board disqualified claimant from receiving additional wage replacement benefits on or after September 12, 1996. Claimant appeals.

We address first that aspect of the Board's determination finding that claimant violated Workers' Compensation Law § 114-a (1), which provides in relevant part as follows: "If for the purpose of obtaining compensation pursuant to section fifteen of this chapter, or for the purpose of influencing any determination regarding any such payment, a claimant knowingly makes a false statement of representation as to a mate-

rial fact, such person shall be disqualified from receiving any compensation directly attributable to such false statement or representation. In addition, as determined by the board, the claimant shall be subject to a disqualification or an additional penalty up to the foregoing amount directly attributable to the false statement or representation." Although this statutory provision is relatively new (*see*, L 1996, ch 635, § 16), the administrative review process concerning same is not, that is, the Board's factual determination following a hearing as to whether a particular claimant has indeed violated the statute by making a false statement or representation as to a material fact for the purpose of obtaining benefits or for the purpose of influencing any determination regarding any payment of benefits will be upheld if supported by substantial evidence (*see*, CPLR 7803 [4]; *see generally*, *Matter of Jeffries v Berney*, 108 AD2d 970; *but see*, Minkowitz, Practice Commentary, McKinney's Cons Laws of NY, Book 64, Workers' Compensation Law § 114-a, 2000 Pocket Part, at 27). With this standard in mind, we now turn to the evidence before the Board.

At a February 3, 1997 hearing, claimant testified that he was not affiliated with his son's landscaping and tree service business "at all" and further denied that he worked for that business. At this hearing, claimant was specifically asked if he "perform[ed] *any* services at all" (emphasis supplied) for this business in the summer of 1996 (whether compensated for such work or not), to which he responded, "No, I didn't get paid. I help my son once in while delivering a piece of equipment or something. If he called up and said he needed a tool, I would bring it out to him. That's what fathers are for, I guess."

A surveillance video of claimant taken on September 5, 1996, however, depicts claimant engaging in significant manual labor for his son's business for a sustained period of time. Specifically, claimant can be seen on the videotape trimming trees with the use of a long extended pole, raking, picking up and carrying branches and a ladder, carrying logs over his shoulder, dragging tree limbs, climbing in and out of a truck to retrieve equipment and using various equipment (i.e., a chain saw and leaf blower), all with seemingly no physical struggle or discomfort. When confronted with this videotape at the July 18, 1997 hearing, claimant testified that the activities he performed that day were atypical. Moreover, while he initially testified that he was in constant pain while performing the subject tasks—a claim that is certainly not reflected in the videotape—he also alleged that he was on morphine and "a lot of pain pills" that day. Claimant's son also testified at this

hearing and admitted that claimant was "giving [him] a hand" on September 5, 1996, as he had done on "half a dozen times" in the past.

The record further reveals that as of the February 3, 1997 hearing in this matter, claimant had been examined on behalf of the Fund by orthopedic surgeon Andre Le Febrve. Le Febrve's most recent examination of claimant prior to that hearing occurred precisely one week *after* claimant performed the activities depicted in the videotape. At this examination, claimant reported that he essentially performed "hobbies at home" such as fishing and decorative wood working. He complained of numbness in his neck and hands, as well as chronic lower back pain. He also "limit[ed] his lumbar motion and neck motion" during the physical examination. Following this examination, and then unaware of the activities depicted on the videotape, Le Febrve opined that claimant had a marked partial degree of disability which was permanent in nature (only 50% of which was attributable to his June 1991 injury) and that his employability was as "semi-sedentary part-time basis with a change in position regularly."

Following his review of the videotape, however, Le Febrve issued a follow-up report to the Fund in which he indicated that the videotape depicted significant physical activities which were contrary to statements given to him by claimant at the September 12, 1996 examination. Le Febrve further noted in this report that "[a]ssuming that the observed individual is identified as [claimant], the individual's ability in performing the observed activities on the said video would *diametrically contradict some of the statements made by [claimant] at the time of his last [individual medical examination]*" (emphasis supplied), namely, that he had not engaged in any physical work other than light home hobbies. Le Febrve further noted that claimant had a "voluntary restriction of neck and lower movements during the exam which far exceeded those observed repeatedly during the video." He summarized by stating that claimant was less than "forthright" in his answers and in his active examination on September 12, 1996.

Under these circumstances, we are satisfied that there is substantial evidence to support the Board's factual conclusion that claimant violated Workers' Compensation Law § 114-a by prevaricating at the February 3, 1997 hearing and by making false statements to Le Febrve (*see, Matter of Jeffries v Berney*, 108 AD2d 970, *supra*). Moreover, the additional penalty imposed by the Board—disqualification from receiving additional wage replacement benefits on and after September 12,

1996—is specifically authorized by the statute and will not be disturbed by this Court (compare, Matter of Naklicki v St. Charles Hosp., 224 AD2d 850, with L 1996, ch 635, § 16).

With respect to the issue of whether claimant voluntarily withdrew himself from the labor market, we note that this too is a factual determination to be made by the Board which will be affirmed by this Court if supported by substantial evidence (see, Matter of Peluso v Fairview Fire Dist., 269 AD2d 623). When asked at the November 22, 1996 hearing if he was "trying to seek employment," claimant responded without elaboration or detail that he had "looked for employment." At the July 18, 1997 hearing, claimant confirmed that he had not sought employment since July 1994 because he did not think he could get a job given his physical limitations. In light of this testimony, as well as evidence in the record that claimant is indeed capable of performing some physical activity for a sustained period of time, the Board's determination that claimant voluntarily withdrew himself from the labor market is also supported by substantial evidence.

Cardona, P. J., Mercure, Spain and Graffeo, JJ., concur. Ordered that the decision and amended decision are affirmed, without costs.