■ In the Matter of the Claim of JAMES A. LOSURDO, Appellant, v ASBESTOS FREE, INC., Respondent. WORKERS' COMPENSATION BOARD, Respondent. [754 NYS2d 760] —Carpinello, J. Appeal from a decision of the Workers' Compensation Board, filed July 27, 2001, which, inter alia, ruled that claimant violated Workers' Compensation Law § 114-a and was disqualified from receiving additional wage replacement benefits.

At issue is a decision of the Workers' Compensation Board rescinding certain benefits awarded to claimant and disqualifying him from future wage replacement benefits for violating Workers' Compensation Law § 114-a (1). The record reveals that claimant, who had been receiving workers' compensation benefits for a September 12, 1994 work-related injury to his left knee, maintained to all examining physicians and on a medical history questionnaire that he had had no prior problems with his left knee before the accident. More importantly, at a May 15, 1997 hearing, claimant was asked whether he had "any difficulties" or "receive[d] any medical treatment for" his left knee prior to his accident, and he responded in the negative. Claimant was also asked if he had any prior difficulties with his right knee, to which he responded that he had one accident as a child. In actuality, claimant had experienced difficulty with his left knee warranting medical attention on *two*

occasions in the five-year period preceding the accident (i.e., on November 4, 1989 and September 11, 1991) and further had experienced difficulty with his right knee on one occasion during the same time period (i.e., August 14, 1990).

Proceedings thereafter ensued to explore whether claimant violated Workers' Compensation Law § 114-a (1). Although a Workers' Compensation Law Judge (hereinafter WCLJ) found no evidence of fraud following these proceedings, the Board disagreed on administrative appeal. Reviewing claimant's testimony at both hearings (i.e., his misstatements under oath at the May 1997 hearing and his subsequent explanation for such misstatements at the second hearing), the Board concluded that claimant did in fact violate this statute. Specifically, the Board found those statements denying any "prior medical history of his injury site" (i.e., the left knee) to be of sufficient materiality to bring claimant within the confines of the statute. Claimant now appeals.

Upon our review of the record, we find that the Board's determination is supported by substantial evidence (*see Matter of Flow v Mark IV Constr. Co.*, 288 AD2d 779, 780; *Matter of Phelps v Phelps*, 277 AD2d 736, 738), despite the existence of evidence, or inferences from such evidence, which could support a contrary result (*see Matter of Hughes v Indian Val. Indus.*, 290 AD2d 871, 872). Claimant's family practitioner testified that he examined claimant on November 4, 1989 for complaints of a *left* knee injury sustained in a football game the previous day. Indeed, the record reveals that claimant was diagnosed with a left "knee sprain" and referred to an orthopedist. The record further confirms that claimant also presented himself to a local emergency room on September 11, 1991, again with complaints of pain in the left knee, and he was diagnosed with a possible "meniscus injury." The emergency room report documents a history of "torn cartilage" and regular snapping and popping of the knee. Claimant was instructed at this time to wear an "immobilizer," use crutches and follow up with a particular physician. He was further directed not to place any weight on the knee or work for one week. The record also contains an August 14, 1990 emergency room record which indicates that an X ray was ordered of claimant's right knee on that day.

When questioned about his failure to disclose the September 1991 problem with his left knee, claimant maintained that he did not remember ever injuring his left knee and specifically had no independent recollection of ever visiting the emergency room that day or giving the history noted in the record. Re-

markably, however, he was nevertheless able to recall that he "went home [from the emergency room] and a couple days later it was all better." With respect to the November 1989 left knee injury, claimant's testimony significantly wavered. When asked if he recalled an injury to his knee at this time, claimant initially responded in the negative, but then immediately corrected himself and admitted that he did recall it. He then added that "when I had answered your question that day in court, I thought when I was answering about the football injury, I thought it was my right leg and I hadn't had another problem with my left leg * * * it was a simple mistake."[1] Despite this latter admission, claimant thereafter maintained that the September 1991 injury was the first time he had difficulties with his left knee. He was then specifically questioned about the November 4, 1989 report documenting treatment for his *left* knee during the football game, and he testified that he had no recollection of it.

In short, despite *three* prior problems with his knees in general in the five-year period before his accident, two of which pertained to his left knee, not one was reported on a medical history form completed by claimant, even though the document specifically requested a history of any problems with his "leg/knee" and also inquired if he had been "under a doctor's care within the past five years" for reasons other than the work-related injury. Moreover, none of these prior injuries was mentioned when claimant was specifically questioned under oath in May 1997. Claimant's apparent explanation that he simply forgot about all three incidents, particularly those pertaining to his left knee, was obviously found to be unworthy of belief by the Board.[2]

To the extent that claimant repeatedly argues that the WCLJ observed his demeanor during his testimony at the second hearing and found no evidence of fraud, this is of no legal moment as the *Board* is the sole and final arbiter of witness credibility (*see e.g. Matter of Chadha v J.B. Lippincott Co.*, 300 AD2d 923; *Matter of Spector v New York City Bd. of Educ.*, 292 AD2d 741, 742; *Matter of McCabe v Peconic Ambulance & Supplies*, 101 AD2d 679, 680) with the authority to draw any reasonable inference from the evidence in the record (*see e.g. Mat-*

---

**1.** In actuality, when questioned at the prior hearing, claimant denied having any prior injury to either knee, with the exception of a *childhood* injury to his right knee.

**2.** While claimant's failure to acknowledge an injury to the right knee is not a false statement concerning a "material" fact for the purpose of Workers' Compensation Law § 114-a, it is certainly further evidence that he was not a credible witness.

*ter of Maliszewska v Dupuy*, 289 AD2d 683, 684, *lv denied* 97 NY2d 612; *Matter of Myers v Eldor Contr. Co.*, 270 AD2d 671, 672). The Board obviously rejected claimant's exculpatory explanations for his prior testimony and inferred, reasonably so in our view, that he knowingly made false statements as to a material fact for the purpose of obtaining benefits or influencing any determination regarding such benefits (*see Matter of Phelps v Phelps*, 277 AD2d 736, *supra*).[3] Finally, to the extent that the Board found a violation of the statute "notwithstanding the fact that * * * claimant's compensable injury is not, as a matter of law, apportionable with his prior injuries," we find same to be a reasonable interpretation of Workers' Compensation Law § 114-a (*compare Matter of Harris v Syracuse Univ.*, 168 AD2d 791, *appeal dismissed and lv denied* 77 NY2d 978).

Cardona, P.J., Mercure, Spain and Kane, JJ., concur. Ordered that the decision is affirmed, with costs.

---

**3.** In an attempt to prove that he did not intentionally make false statements at the May 1997 hearing, claimant argues on appeal that he simply forgot about "one" inconsequential incident concerning his left knee (i.e., the September 1991 trip to the emergency room) and asserts that the 1989 football injury was to his *right* knee. Notably, however, the sole medical document referenced as factual support for this latter assertion is the *August 14, 1990* emergency room record which clearly pertains to his right knee.