OPINION OF THE COURT
Titone, J.
The familiar issue presented on this appeal is whether claimant’s injuries arose out of and in the course of her employment. We conclude that claimant did not sustain a compensable injury.
Claimant, Mattiel Lemon, was employed as a conductor by the appellant, New York City Transit Authority, a self-insured *326 employer (see, Workers’ Compensation Law § 50). She was assigned to the Woodlawn IRT No. 4 subway line, which operates between Woodlawn Avenue terminal in The Bronx and New Lots Avenue in Brooklyn. Claimant generally worked between the hours of 7:23 p.m. and 3:23 a.m., and was required to sign in and out at the beginning and end of each shift at the Woodlawn Avenue terminal. Since claimant resided in Brooklyn near the Utica Avenue station, an express stop on the No. 4 line, she commuted to and from Woodlawn Avenue by subway. As a transit worker, she was issued a transportation pass entitling her to travel the subways free of charge.
On December 15, 1983, claimant finished her shift at approximately 4:00 a.m. and signed out. Still in uniform, and carrying her transportation pass, she boarded a No. 4 Brooklyn bound train to go home. Claimant disembarked at the Utica Avenue station, passed through the turnstile, and fell while climbing the stairs leading to the street. She fractured her knee and was unable to return to work until May 1984.
Claimant sought workers’ compensation benefits for lost time, but the Transit Authority contested the claim. After a hearing, however, claimant was awarded benefits, and the Workers’ Compensation Board affirmed the Hearing Officer’s findings, concluding that the accident occurred within the precincts of claimant’s employment. The Appellate Division affirmed on the ground that the Transit Authority, by issuing free passes to its employees, "implicitly assumed the responsibility of transporting claimant to and from work” and was "in exclusive control of the conveyance on which the accident occurred” (128 AD2d 943, 944, 945). We now reverse.
An employee is entitled to receive benefits under the Workers’ Compensation Law only for injuries "arising out of and in the course of the employment” (Workers’ Compensation Law § 10 [1]; see also, § 2 [7]; § 21; Matter of Merchant v Pinkerton’s, Inc., 50 NY2d 492, 495). Given the remedial nature of the Workers’ Compensation Law, we have consistently construed this requirement liberally, in order to effectuate "the economic and humanitarian” objectives of the act (Matter of Husted v Seneca Steel Serv., 41 NY2d 140, 145; see also, Matter of Smith v Tompkins County Courthouse, 60 NY2d 939, 941; Matter of Tallini v Martino & Son, 58 NY2d 392, 395; Matter of Holcomb v Daily News, 45 NY2d 602, 607).
Nevertheless, only if an injury flows as a natural conse *327 quence of the employee’s duties can it be said to arise out of the employment (Matter of Malacarne v City of Yonkers Parking Auth., 41 NY2d 189, 193; see also, Matter of Connelly v Samaritan Hosp., 259 NY 137, 139; Matter of McCarter v LaRock, 240 NY 282, 285-286; Matter of Scholtzauer v C. & L. Lunch Co., 233 NY 12, 14-15). Similarly, for an injury to occur in the course of employment, " 'it must have been received while the employee was doing the work for which he was employed’ ” (Matter of Malacarne v City of Yonkers Parking Auth., supra, at 193, citing Matter of Scholtzauer v C. & L. Lunch Co., supra, at 14-15). "A purely fortuitous coincidence of time and place is not enough. There must be” a causal relationship or nexus between the accident and the employment (Matter of Connelly v Samaritan Hosp., supra, at 139).
The question here is whether claimant’s journey to and from work should be characterized as part of the service performed by the employee. The well-established rule is that "employees are not deemed to be within the scope of their employment while” commuting, since "the risks inherent in traveling to and from work relate to the employment only in the most marginal sense” (Matter of Greene v City of New York Dept. of Social Servs., 44 NY2d 322, 325; Matter of Malacarne v City of Yonkers Parking Auth., supra, at 194; Matter of Husted v Seneca Steel Serv., supra, at 142; cf., Matter of Davis v Newsweek Mag., 305 NY 20, 23-26 [no compensation for injuries arising out of purely personal activities]).
We have recognized a number of exceptions to this general rule. As long as there existed some reasonable nexus between the risk to which a claimant was exposed and the employment, recovery has generally been upheld, even though the injury was sustained while traveling to or from work (see, e.g., Matter of Holcomb v Daily News, 45 NY2d 602, supra; Matter of Husted v Seneca Steel Serv., supra; cf., Matter of Greene v City of New York Dept. of Social Servs., supra [employee required to travel to clients’ homes]; Matter of Malacarne v City of Yonkers Parking Auth., supra [assault on employee]; Matter of Seymour v Rivera Appliances Corp., 28 NY2d 406, 409 [injury compensable if nexus exists between assault on employee and employment]; Matter of Field v Charmette Knitted Fabric Co., 245 NY 139 [employee’s injuries sustained in fight with another employee on street compensable when quarrel began on employer’s premises]).
*328 We agree, however, with the Transit Authority that none of the exceptions to the general rule are applicable here. According to her own testimony at the hearing, claimant’s duties ended when she signed out of work at approximately 4:00 a.m. at the Woodlawn terminal in The Bronx. She was injured 1 hour and 20 minutes later while climbing the stairs on her way home at the Utica Avenue station in Brooklyn. Given the remoteness in terms of time and space from the Woodlawn terminal, we can see no reasonable connection between claimant’s injury and her employment.
Primarily relying on our decision in Matter of Holcomb v Daily News (45 NY2d 602, supra), the Workers’ Compensation Board argues that this accident was compensable because the transportation pass issued by the Transit Authority effectively made the employee’s journey to and from work a part of claimant’s employment. Such an assertion is untenable, since it ignores our prior holdings.
In Matter of Murphy v New York City Tr. Auth. (33 NY2d 878, affg 38 AD2d 346), and Tallon v Interborough R. T. Co. (232 NY 410), we were faced with factual scenarios almost identical to the one before us. In Murphy, a Transit Authority token clerk completed his shift and, using a transportation pass, took the subway home without paying the fare. He was injured while descending the stairs to the street. Compensation was denied on the ground that the employee " 'had completed his tour of duty, was on his way home, by route of his own choice, and had traveled a distance from his assigned place of work, removing him from the precincts of his place of employment’ ” (38 AD2d, supra, at 347). Similarly, in Tallón, a subway guard took the train to work using his employee’s pass and was killed when the train he was riding collided with another train. We concluded that inasmuch as his death occurred before he reported to work, the accident was not compensable. We find these cases determinative here, and nothing we said in Holcomb mandates a contrary result in this case.
We agree with the Board that Holcomb represents an exception to the general rule that injuries sustained by an employee while commuting to and from work are not compensable, but find the Board’s argument that Holcomb is applicable to the facts of this case unpersuasive. Under the rationale of our older cases, if an employer had a contractual duty to transport its workers to and from work, injuries sustained as *329 a result of the journey were compensable. If the employer, however, voluntarily provided its employees with transportation to and from work, any injuries sustained during the commute would not be compensable (see, Matter of Holcomb v Daily News, supra, at 605-606). In Holcomb, we abolished the traditional distinction between custom and contract, holding that "[a]n employer who assumes by custom or contract the responsibility to transport his employees must likewise bear the responsibility for the risks encountered in connection with the transportation. This is especially true when the employer is in exclusive control of the conveyance” (id., at 606-607). However, Holcomb in no way alters the fundamental principle of the Workers’ Compensation Law, which requires that for an injury to be compensable, there be some nexus between the accident and the employment.
In Holcomb, the record indicated that the Daily News had an established custom of permitting its truck drivers to regularly provide other News employees rides to work on its trucks. The company’s supervisors and dispatchers were aware of this practice, and the testimony indicated "that supervisors had gone so far as to criticize drivers for not having picked up employees” (id., at 605). Significantly, the record also contained findings of fact indicating that the employer actually derived a benefit from this practice. For these reasons, we upheld the Board’s determination that the Daily News had an established custom of transporting its workers, and that this practice was of some benefit to the employer, thereby rendering "the transportation an incident of the employment” (id., at 607).
The facts of Holcomb bear little resemblance to the facts before us now. Although claimant was permitted to travel on the subways free of charge, there is absolutely no evidence in the record to indicate that the Transit Authority assumed an obligation, either by contract or custom, to facilitate her travel to and from work (see, Matter of Kowalek v New York Consol. R. R. Co., 229 NY 489, 492-493). Moreover, noticeably absent from the record before us is any finding that the Transit Authority derived any benefit because claimant utilized her pass to commute to and from work. The pass was a fringe benefit, equivalent to added compensation, that could be used by Transit employees as they wished. Use of these passes was not limited to commuting, nor could we reasonably expect the Transit Authority to know which of its thousands of workers used the pass for that purpose. As we stated in *330 Matter of Kowalek v New York Consol. R. R. Co. (supra, at 492-493), in exercising the right to use the subways, claimant made her own free choice whether to use the pass for commuting "and served [her] own convenience. The company was indifferent as to the way or means by which [s]he reached the place where the day’s work began.” (See also, Tallon v Interborough R. T. Co., supra.)
The Utica Avenue station could not have been within the precincts of claimant’s employment at the time of the accident, since her employment had terminated at 4:00 a.m. when she signed out of work in The Bronx. That claimant was employed by the Transit Authority, which provides mass transit services for the City of New York and was, therefore, in control of the stairs at Utica Avenue where the accident occurred, does not alter the relationship between claimant and the Transit Authority at the time of the accident. Claimant was a commuter, not an employee, using the subways as thousands of others do every day (Tallon v Interborough R. T. Co., supra). "[I]n a very technical and artificial sense”, it is true that claimant was on her employer’s premises when she was injured, but realistically, claimant was using the subway just as any other member "of the public, whether they have free passes or not” (1 Larson, Workmen’s Compensation Law § 17.20, at 4-223). That claimant also coincidentally was an employee of the Transit Authority, standing alone, is not sufficient to create a relationship between her accident and her employment.
Accordingly, the order of the Appellate Division should be reversed, with costs, and the claim dismissed.