OPINION OF THE COURT
 

 Simons, J.
 

 Claimant Michael Neacosia was employed as a security
 
 *474
 
 officer by respondent New York State Power Authority at a nuclear power plant located near Oswego, New York. On May 17, 1991, Neacosia completed his shift at 1:00 p.m. and left the plant in his car. He stopped to deliver his uniforms to Karpinski’s, a dry cleaner in Oswego. The cleaner was one of several recommended by respondent as part of an arrangement by which it provided its guards with uniforms, and required that the uniforms be kept clean and presentable. Although the uniform labels indicated that they could be machine washed, respondent assumed the expense of dry cleaning and maintained and paid directly accounts at the dry cleaning establishments. Alternatively, employees could use other establishments than those recommended and submit receipts to the employer for reimbursement.
 

 After leaving some uniform shirts and trousers at Karpinski’s, claimant headed home along his usual route. During the trip he was involved in an automobile accident and sustained severe injuries. The issue before the Court, broadly stated, is whether his injuries arose out of and in the course of his employment.
 

 Neacosia submitted a claim for workers’ compensation benefits contending that he was injured while "completing a work related trip.” The employer denied liability claiming Neacosia was involved in an accident with his personal vehicle on a public highway outside of work hours. The Law Judge concluded upon stipulated facts that claimant’s travel had a dual purpose which served to extend the scope of his employment, and accordingly awarded him workers’ compensation benefits. Upon review by the Workers’ Compensation Board the award was affirmed.
 

 Respondent and its insurance carrier then appealed to the Appellate Division. A divided Appellate Division reversed, the majority concluding that in the absence of evidence that Neacosia was
 
 required
 
 to have his uniforms dry cleaned, the Board’s finding was not supported by substantial evidence. The two dissenters believed the employer’s policies with respect to claimant’s uniforms and their maintenance established the requisite nexus between claimant’s employment and his errand to support the claim. Neacosia and the Workers’ Compensation Board appeal to this Court as of right
 
 (see,
 
 CPLR 5601 [a]).
 

 I
 

 An injury sustained by an employee is compensable under
 
 *475
 
 the Workers’ Compensation Law if it "aris[es] out of and in the course of the employment”
 
 (see,
 
 Workers’ Compensation Law § 10 [1]; § 2 [7]). The general rule is that injuries sustained during travel to and from the place of employment do not come within the statute
 
 (see, Matter of Lemon v New York City Tr. Auth.,
 
 72 NY2d 324, 327;
 
 see also, Matter of Greene v City of New York Dept. of Social Servs.,
 
 44 NY2d 322, 325;
 
 Matter of Ousted v Seneca Steel Serv.,
 
 41 NY2d 140, 142;
 
 Van Gee v Korts,
 
 252 NY 241, 244; 1 Larson, Workmen’s Compensation § 15.00). There are exceptions to this "going and coming” rule, however. For example, an outside employee, such as a travelling salesperson who does not have a fixed worksite, may be compensated for injuries sustained in the course of travel between home and appointments
 
 (see, e.g., Matter of Bennett v Marine Works,
 
 273 NY 429), an employee who has engaged in travel for dual purposes — both business and personal — may sustain compensable injuries during travel
 
 (see, e.g., Matter of Mahoney v Stern & Co.,
 
 9 NY2d 931,
 
 revg
 
 9 AD2d 843), and an employee whose home serves as an additional place of employment may also be compensated
 
 (see, e.g., Matter of Fine v S.M.C. Microsystems Corp.,
 
 75 NY2d 912;
 
 Matter of Hille v Gerald Records,
 
 23 NY2d 135).
 

 Claimant relies upon yet another, the "special errand” exception, which provides that when the employee’s travel serves a purpose of the employer, injuries sustained during that travel may be compensable
 
 (see, e.g., Matter of Teles v Westbury S & S Concrete,
 
 40 NY2d 902,
 
 affg
 
 50 AD2d 954;
 
 Matter of Love v N. Y. S. Craig School,
 
 34 NY2d 680,
 
 affg
 
 42 AD2d 796;
 
 Matter of Watson v American Can Co.,
 
 18 NY2d 758,
 
 affg
 
 23 AD2d 423;
 
 see also, Matter of Bump v Central School Dist. No. 3,
 
 34 NY2d 577,
 
 affg on opn below
 
 40 AD2d 243;
 
 see generally,
 
 1 Larson, Workmen’s Compensation § 16.10, at 4-204;
 
 cf., Matter of Lemon v New York City Tr. Auth., supra; Matter of Broich v New York State Union Coll. of Optometry,
 
 117 AD2d 868, 869).
 
 *
 
 The question on this appeal
 
 *476
 
 is whether the special errand exception applies only if, as the Appellate Division held, the employer has expressly required or directed the employee to perform the errand.
 

 A.
 

 The test for determining whether specific activities are within the scope of employment or purely personal is whether the activities are both reasonable and sufficiently work related under the circumstances
 
 (Matter of Richardson v Fiedler Roofing,
 
 67 NY2d 246, 249;
 
 see, Matter of Capizzi v Southern Dist. Reporters,
 
 61 NY2d 50). Given the remedial nature of the Workers’ Compensation Law, the courts have historically construed this requirement liberally to effectuate the statute’s economic and humanitarian purposes
 
 (Matter of Lemon v New York City Tr. Auth.,
 
 72 NY2d, at 326,
 
 supra; see also, Matter of Smith v Tompkins County Courthouse,
 
 60 NY2d 939, 941;
 
 Matter of Holcomb v Daily News,
 
 45 NY2d 602, 607).
 

 Respondents urge us to apply the bright-line rule adopted by the majority at the Appellate Division to find compensable injury only when the employer expressly requires the employee to engage in the particular errand. However, the unpredictable and varied nature of work-related incidents render such claims unsuitable for any arbitrary rule. To attempt to apply a bright-line rule could produce results that are both inconsistent with our existing precedents and with the policy of liberally construing the statute.
 

 Past decisions addressing exceptions to the "going and coming” rule have exhibited a common theme in which the courts have broadly applied considerations involving the nature of the employee’s off-premises travel, whether it inured to the benefit of the employer, and whether the employer encouraged the employee’s conduct. For example, in
 
 Matter of Love v N Y. ,S. Craig School (supra)
 
 a hospital attendant on a paid leave of absence was injured in an automobile accident while commuting to the nursing school she was attending. Although the claimant obtained an obvious personal benefit from the schooling, the court held that her attendance arose out of her employment because the employer induced her attendance by granting a fully paid leave of absence for education. Moreover,
 
 *477
 
 the employer stood to benefit from claimant’s improved skills and knowledge because she had given a commitment to return to work following the schooling. Similarly, a high school teacher involved in a fatal auto accident on his way home from an off-premises night course he attended voluntarily was covered by compensation in
 
 Matter of Bump v Central School Dist. No. 3 (supra).
 
 Although the teacher was not required to attend the course, his supervisors had approved his attendance, the employer contributed part of the cost, and both employer and employee stood to benefit from the schooling because the employee would acquire knowledge that he could apply to the development of a new curriculum for the school.
 

 Other illustrations can be found in cases involving employee conduct with mixed purposes while off the employer’s premises during the lunch hour, a time when an employee is normally outside the scope of his or her employment
 
 (see, e.g., Matter of Watson v American Can Co.,
 
 18 NY2d 758,
 
 affg
 
 23 AD2d 423,
 
 supra).
 
 In that case, the employee’s injury was compensable because the employer facilitated the employee’s errand — cashing her paycheck — by making arrangements with the bank to expand its hours and employ extra tellers during lunchtime on paydays, encouraged the errand by "looking the other way” if an employee returned from the bank a few minutes late, and benefitted from the errand because the employer no longer wished to use a cash payroll. In
 
 Matter of Goldberg v Gold Medal Farms
 
 (18 AD2d 951), it was established that the employer paid for and benefitted from employees taking lunch at a designated restaurant; thus injuries sustained while returning to work from that restaurant were compensable. In
 
 Matter of Younger v Motor Cab Transp. Co.
 
 (260 NY 396), compensation was awarded to a cabdriver, who divided his fares with his employer, when he parked his cab at an advantageous location and returned to the garage to pick up his paycheck and was fatally injured while returning to his cab. Notably, in the
 
 Watson, Goldberg,
 
 and
 
 Younger
 
 cases, none of the claimants were directed or required to perform the particular errand from which they were returning when injured, and each claimant had other options available to accomplish the task undertaken. In each, however, there was encouragement or inducement by the employer for conduct which benefitted the employer.
 

 We have also followed this analysis to both affirm compensation and deny it in cases in which the employer facilitated the employee’s travel between work and home and the em
 
 *478
 
 ployee sustained injuries during the trip
 
 (see, Matter of Holcomb v Daily News,
 
 45 NY2d 602,
 
 supra; and cf., Matter of Lemon v New York City Tr. Auth.,
 
 72 NY2d, at 329,
 
 supra; see also, Matter of Murphy v New York City Tr. Auth.,
 
 33 NY2d 878,
 
 affg
 
 38 AD2d 346;
 
 Tallon v Interborough R. T. Co.,
 
 232 NY 410).
 

 The rule to be derived from these decisions is that an employee who engages in a work-related errand while travel-ling between work and home, and is injured during that trip, sustains injuries that arise out of and in the course of his or her employment if the employer both encouraged the errand and obtained a benefit from the employee’s performance of the errand. Application of this two-part test assures the legitimacy of the claim that the employee was engaged in the service of his or her employer, as distinguished from having undertaken a personal errand that had some incidental work-related purpose. That the employer obtains some benefit from the employee’s errand will not alone sustain the claim; there must be evidence of affirmative conduct by the employer soliciting or encouraging the errand.
 

 B.
 

 Because the determination whether an injury is compensable turns on the facts of a given case, the Workers’ Compensation Board is afforded "wide latitude” in deciding whether the employee was engaged in a special errand
 
 (see, Matter of Richardson v Fiedler Roofing,
 
 67 NY2d 246, 249,
 
 supra).
 
 Here, the record supports the Board’s conclusion that claimant was engaged in a special errand. He was required by his employer to wear a uniform and to keep it clean and was subject to discipline if he failed to do so. Although the employee could choose various means to clean his uniforms, the employer was not indifferent to how and where the cleaning was done. It encouraged guards to dry clean their uniforms by paying for dry cleaning services and by establishing accounts at selected establishments, such as Karpinski’s. This not only induced employees to use the particular establishments but enabled them to receive free cleaning without the inconvenience of paying cash and submitting receipts for reimbursement. The benefit to the employer is equally apparent. Its security officers presented a neat and clean appearance and claimant’s patronage at Karpinski’s provided the employer with the extra benefit of consolidated accounting, because the employer
 
 *479
 
 was saved the inconvenience of reimbursing claimant for cash expenditures.
 

 II
 

 The question remains whether claimant’s employment had terminated prior to the occurrence of the accident, thus foreclosing application of the special errand exception. Respondents contend that once Neacosia left Karpinski’s and started home by his usual route he was no longer engaged in the service of his employer. However, the fact that the employee’s injury occurs on the way home after having completed the work-related errand does not necessarily mean that the employee’s travel is no longer within the scope of employment
 
 (see, e.g., Matter of Mahoney v Stern & Co.,
 
 9 NY2d 931,
 
 revg
 
 9 AD2d 843,
 
 supra).
 
 Once an employee engages in the performance of a special errand, he or she is considered to be acting within the scope of employment during travel between the place of employment and home
 
 (see, Matter of Gray v Lyons Transp.,
 
 179 AD2d 985, 986;
 
 Matter of Charak v Leddy,
 
 23 AD2d 437, 438;
 
 see also, Matter of Weinstein v 16 E. 58th St. Corp.,
 
 92 AD2d 678;
 
 Matter of Respole v Schorr,
 
 25 AD2d 581;
 
 cf., Matter of Oehley v Syracuse Boys Club,
 
 151 AD2d 825). The premise of the rule is that the errand for the employer has altered the usual geographical or temporal scheme of travel, thereby altering the risks to which the employee is usually exposed during normal travel.
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, and the decision of the Workers’ Compensation Board reinstated.
 

 Chief Judge Kaye and Judges Titone, Bellacosa, Smith, Levine and Ciparick concur.
 

 Order reversed, etc.
 

 *
 

 The "special errand” exception and the "dual purpose” exception to the general rule of noncompensability of injuries sustained while travelling are to be distinguished. As noted above, the special errand exception may be invoked when an employee, travelling to or from home, has engaged in a work-related errand. The dual purpose exception may apply when an employee is injured in transit to or from a location off the employer’s premises when the employee’s presence at that location served both a business and personal purpose
 
 (see, Matter of Hille v Gerald Records,
 
 23
 
 *476
 
 NY2d 135,
 
 supra
 
 [employee’s home could be considered a place of employment];
 
 Matter of Mahoney v Stem & Co.,
 
 9 NY2d 931,
 
 revg
 
 9 AD2d 843,
 
 supra
 
 [out-of-State trip served both personal and business purposes];
 
 see also, Matter of McDonagh v Troyman Chartering,
 
 50 AD2d 301).