■ In the Matter of the Claim of MOOL CHADHA, Appellant, v J.B. LIPPINCOTT COMPANY et al., Respondents. WORKERS' COMPENSATION BOARD, Respondent. [753 NYS2d 177] —Peters, J. Appeals (1) from a decision of the Workers' Compensation Board, filed November 15, 2000, which ruled the claimant did not sustain a compensable injury and denied his claim for workers' compensation benefits, and (2) from a decision of said Board, filed January 24, 2002, which denied claimant's application for full Board review or reconsideration.

On September 10, 1993, at approximately 9:15 A.M., claimant,

a medical book salesperson for J.B. Lippincott Company (hereinafter the employer), was driving his four-door sedan on the New Jersey side of the George Washington Bridge when he was sideswiped by a 16-wheel tractor trailer. Claimant contended that the force of the collision propelled his head into the windshield and further dislodged a bookcase filled with medical books which hit him in his neck and back. He also alleged a temporary loss of consciousness. Yet, when approached by a police officer, claimant failed to report any injuries. Although such officer was not a witness to the accident, he nonetheless completed an accident report. According to such report, the vehicles were traveling at an estimated speed of 0 to 10 miles per hour and only claimant sustained damage to his vehicle in an amount estimated to be over $800. Claimant asserted that the accident took place as he was traveling from his home in Staten Island to his first appointment of the day in midtown Manhattan.

Claimant attended scheduled sales appointments on that day, but asserted that he lost two days of work due to his injuries. He then resumed work until October 14, 1993, when he sent a letter to his supervisor, Rick Cordrey, explaining that he was no longer able to continue because of his pain and injuries. Notably, Cordrey had sent a letter to claimant on October 7, 1993 which was critical of his job performance; it further indicated that barring significant improvement, his employment would be terminated. On October 20, 1993, claimant applied for and ultimately received short-term disability benefits. Claimant never returned to work and his employment was thereafter terminated.

The record reveals that claimant has been treated by a number of physicians whose medical records document his reported history of the accident, including the claim that he was struck in the back and neck by bookcases that he carried in the back seat of his car. They further detailed his claimed loss of consciousness, diagnosing that he now suffered from, inter alia, herniated discs, cervical and lumbar pain, headaches, memory loss and dizziness. On December 1, 1993, claimant filed a claim for workers' compensation benefits* which was challenged by the workers' compensation carrier, citing questions as to whether the accident arose within the course of employment, whether there was proper and timely notice and whether there was an employer/employee relationship.

---

* Claimant first attempted to file a claim on October 26, 1993 with a C-2 form which either falsely or mistakenly identified him as the employer's northeast regional manager.

At the March 1994 hearing, the Workers' Compensation Law Judge (hereinafter WCLJ) established the claim over the carrier's objection and request for further testimony. The carrier successfully appealed, with the Workers' Compensation Board directing that hospital records for the date of the injury be produced and that further testimony be taken of both claimant and John Schneider, the regional manager whom claimant allegedly orally informed of the accident prior to his receipt of Cordrey's October 7, 1993 letter. It specifically sought testimony on the issues of accident, notice and causal relationship. At the May 1995 hearing, the WCLJ denied the claim, finding that claimant's presence on the George Washington Bridge, rather than on a more direct route from Staten Island, indicated that the accident was not sustained in the course of employment and that, even if it were, his claims of loss of consciousness and other injuries were not credible; the WCLJ forestalled all further questioning of claimant and disallowed the request by counsel to have medical testimony establish the issue of causal relationship.

On March 30, 1999, after a lengthy delay apparently caused by the Board's misplacement of the file, the Board reversed the WCLJ's decision and again established the claim. After full Board review, the decision of the Board was rescinded and remitted for further consideration. On November 15, 2000, the Board, citing claimant's lack of credibility as the primary factor, ruled that claimant did not suffer a compensable injury and closed the case. An appeal was made to this Court as was an application for full Board review or reconsideration. That was denied on January 24, 2002. Claimant appeals that decision, as well as the Board's closure of the case, and both appeals were consolidated by order of this Court.

Pursuant to Workers' Compensation Law § 10 (1), an injury sustained by an employee is compensable only if it arises "out of and in the course of the employment." Generally, injuries sustained while traveling to and from a place of employment do not fall within the purview of this statute. However, "an outside employee, such as a travelling salesperson who does not have a fixed worksite, may be compensated for injuries sustained in the course of travel between home and appointments" (*Matter of Neacosia v New York Power Auth.*, 85 NY2d 471, 475). Even "an employee who has engaged in travel for dual purposes—both business and personal—may sustain compensable injuries during travel" (*id.* at 475). In making such determination, we focus upon the remedial nature of such statute, which should be liberally interpreted (*see id.* at 476).

"[W]hether an activity is within the course of employment or purely personal depends upon whether the activity is reasonable and sufficiently work related" (*Matter of Schuyler v City of Newburgh Fire Dept.*, 292 AD2d 702, 703; *see Matter of Blanchard v Eagle Nest Tenancy in Common*, 285 AD2d 856, 857).

While we recognize that such a factual determination is relegated to the Board which must be sustained if supported by substantial evidence (*see Matter of Gedon v University Med. Residents Servs.*, 252 AD2d 744, 745, *lv denied* 92 NY2d 817), we fail to find record support for the conclusion that the injury did not arise within the course of employment. Claimant has consistently maintained, throughout these proceedings, that he traveled to the George Washington Bridge via the New Jersey Turnpike from his home in Staten Island to avoid the morning traffic at both the Holland and Lincoln Tunnels. He perceived this as a more efficient route to his first appointment at Roosevelt Hospital in midtown Manhattan. Claimant asked the Board to take judicial notice of the enormous morning traffic jams reported on local radio stations which advised the use of the George Washington Bridge as an alternative to the two Hudson River tunnels. Testimony was also received from Cordrey who confirmed that claimant's territory included Roosevelt Hospital and that salespeople set their own itinerary and do not get reimbursed for mileage.

As to the Board's finding that claimant did not suffer compensable injuries based upon its assessment of his credibility, we recognize that "the Board is the ultimate judge of witness credibility and is free to reject all or any portion of the medical evidence offered" (*Matter of Mitchell v New York City Tr. Auth.*, 244 AD2d 723, 723-724, *lv denied* 91 NY2d 809). Despite the accident report documenting a lack of reported injury, we must find that the wholesale preclusion of claimant's testimony was egregious in light of the remittal of this proceeding for further testimony of claimant and his supervisor. Clearly, claimant was denied the opportunity to explain, inter alia, his reason for not seeking immediate medical attention as well as his failure to advise the police officer that he was injured and had lost consciousness. With the further denial of requests to produce medical experts to establish causal relationship, and the failure of the carrier to produce claimant's hospital records despite repeated directions to do so, we find insufficient evidence to support the determination rendered (*see Matter of Staebler v Chloral Group*, 228 AD2d 865).

Accordingly, there must be a reversal of the Board decision and a remittal for further testimony to address the claim of

causal relationship. With the failure to have produced claimant's supervisor to dispute the claim of timely oral notice, the presumption of sufficient notice will remain (see Workers' Compensation Law § 21 [2]), as will our determination that the accident occurred within the course of claimant's employment.

Crew III, J.P., Carpinello, Lahtinen and Kane, JJ., concur. Ordered that the decisions are reversed, with costs, and matter remitted to the Workers' Compensation Board for further proceedings not inconsistent with this Court's decision.