Alexander LIFSON, Plaintiff–
Appellant,

v.

INA LIFE INSURANCE COMPANY OF
NEW YORK, Cigna Life of New York,
and the Mony Life Insurance Compa-
ny, Defendants–Appellees.

Docket No. 02–9147.

United States Court of Appeals,
Second Circuit.

Argued: May 14, 2003.

Decided: June 25, 2003.

Michael J. Longstreet, Setright & Longstreet LLP, Syracuse, NY, for Plaintiff–Appellant Alexander Lifson.

Kevin J. Brennan, Dwyer & Brennan, New York, NY, for Defendants–Appellees Cigna Life Insurance Company of New York and Mony Life Insurance Company.

Before: WINTER, KATZMANN, Circuit Judges, and GOLDBERG, Judge.[1]

PER CURIAM.

The Plaintiff is the survivor of his wife, who at the time of her death was employed by the Defendant, The MONY Life Insurance Company ("MONY"). Plaintiff's wife was covered under a group business travel insurance policy issued by the Defendant INA Life Insurance Company ("INA"), a predecessor of the Defendant CIGNA Life of New York ("CIGNA"). Subject to some exceptions not at issue in this appeal, the policy covers losses incurred while the insured is traveling "on business ... and in the course of ... business." The incident resulting in the death of Plaintiff's wife occurred while she was on her way home at the end of the ordinary work day, but while she was "on call" for further work assignments. CIGNA denied coverage, and, when Plaintiff filed suit to recover under the policy, the United States District Court for the Northern District of New York (Peebles, *M.J.*), granted sum-

---

1. The Honorable Richard W. Goldberg, United States Court of International Trade, sitting by designation.

mary judgment to the Defendants on the basis that Plaintiff's wife was not "on business ... and in the course of ... business." Because we conclude that a reasonable fact-finder could reach the opposite determination, we vacate the District Court's order and remand for further proceedings.

## BACKGROUND

At about 4:00 p.m. on February 29, 2000, Irene Lifson left her office at the MONY Life Insurance Company, where she was employed as a software engineer. According to her husband, Alexander, she was likely headed for day care to pick up their daughter, and then homeward. However, as she was crossing the street on the way to a nearby parking garage, she was struck by a car, and died the following day.

When Irene left the MONY offices, she had not yet completed all of her work responsibilities for the day. MONY ran extensive computer operations in the evenings. Like all computers, MONY's were prone to occasional errors and breakdowns, and needed human attention to set things aright. The company found, though, that keeping trouble-shooters around their offices at night was expensive. Thus, MONY employed an "on-call" system, in which its technical support staff (including Irene) would carry pagers and were expected to respond promptly to calls. The staff were evaluated based on how promptly they responded, and twenty to thirty minutes was the benchmark. An employee was usually "on call" for one week at a time. The staff were salaried and did not get overtime for being on call, but could take time off during the day to offset on-call time.

On-call employees responded to pages by connecting via modem to the MONY computer system, either via a home computer with MONY's security software installed, or by using the "team laptop." Irene generally used her home computer with installed software. The pagers had a limited range, although just how limited is unclear in the record.

The evidence below suggested that February 29, 2000 was expected to be a busy night for Irene. For one thing, she was on call for two different sets of systems. In addition, as several of the witnesses testified, MONY was expecting trouble with its systems on February 29, 2000, because that night was an "exception on top of an exception": it was a leap day in a year that usually did not have a leap day. MONY's assistant vice president for information technology testified that she thought MONY's computers would have a "Y2K"-type problem. There later proved to be seven different computer problems that night.

At the time of her death, Irene was a participant in MONY's Travel Accident Insurance Plan ("the Plan"), a group employee benefit plan created under the auspices of the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001–1461 (2000 & Supp.2002) ("ERISA"). MONY had purchased the insurance on behalf of its employees from INA, which was later succeeded by CIGNA. In denying Alexander's claim for benefits under the Plan, CIGNA relied on the language of the policy, which provides that:

We will pay the benefits described in the policy for any accident which occurs while a covered person is travelling [sic] or making a short stay:

(a) away from your premises in his city of permanent assignment; and

(b) on business for you, and in the course of your business.

All such trips must be authorized by you.

This coverage does not include:

(a) commuting between the covered person's home and place of work; or

(b) personal deviations by the covered person.

"Personal deviation," as used here, means an activity that is not reasonably related to your business, and not incidental to the business trip.

According to CIGNA, Irene's travel was part of her commute, and therefore excluded. Alternately, it said, her travel was not "authorized."

Alexander then filed this suit, pursuant to ERISA section 502(a)(1)(B).[2] On cross-motions for summary judgment, the District Court granted summary judgment in favor of the Defendants. The magistrate judge first noted that it appeared MONY was not a proper party, since CIGNA was acting as the plan administrator.[3] Then, reasoning primarily by analogy to New York worker's compensation law, the magistrate judge concluded that Irene's journey was not a business trip. In particular, the magistrate judge distinguished New York cases finding that an employee was acting "in the course of" his or her employment when his or her trip home was for a "dual" business and personal purpose. According to the magistrate judge, there was no "actual indication that [Irene] would perform work tasks at home on that evening." He acknowledged that the outcome would have been different if Irene had actually been paged prior to the accident. The magistrate judge did not reach the question whether the "commuting" exclu-

sion would apply, or whether Irene's travel was "authorized."

This appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## DISCUSSION

 Our lone question in this appeal is whether a reasonable finder of fact could conclude that the insured was "on business . . . and in the course of . . . business" at the time of the accident which resulted in her death.[1] We review the District Court's decision to grant summary judgment *de novo. See Rogers v. City of Amsterdam,* 303 F.3d 155, 158 (2d Cir.2002). The Defendants agree that they lack "discretionary authority to determine eligibility . . . or to construe the terms of the plan;" as a result, we may review the determinations of the Plan administrator *de novo. Fay v. Oxford Health Plan,* 287 F.3d 96, 103–04 (2d Cir.2002) (quoting *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)).

 Although this suit is largely a contract dispute, it arises under section 502(a)(1)(B) of ERISA. In claims under section 502(a)(1)(B), we apply federal common law, not state law, in interpreting the beneficiary's entitlements. *Feifer v. Prudential Ins. Co. of Am.,* 306 F.3d 1202, 1210 (2d Cir.2002); *Devlin v. Empire Blue Cross & Blue Shield,* 274 F.3d 76, 84 n. 5 (2d Cir.2001), *cert. denied,* —— U.S. ——, 123 S.Ct. 1015, 154 L.Ed.2d 911 (2003). However, ERISA federal common law is

---

2. ERISA provides that "[a] civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B).

3. As a result, the magistrate judge granted summary judgment in favor of MONY. The Plaintiff has not appealed that determination.

1. The magistrate judge rested his decision entirely on an interpretation of the phrase "on business . . . and in the course of . . . business" as those terms are used in the policy. The magistrate judge therefore did not reach several other textual arguments asserted by the Defendants.

largely informed by state law principles. *Masella v. Blue Cross & Blue Shield of Conn., Inc.*, 936 F.2d 98, 107 (2d Cir.1991). We apply familiar rules of contract interpretation in reading an ERISA plan. *See, e.g., Fay*, 287 F.3d at 104 (noting that Court reads plan as a whole, giving priority to plain meaning of its terms). Terms in the Plan must be construed in accordance with the reasonable expectations of the insured. *See Gallagher v. Reliance Standard Life Ins. Co.*, 305 F.3d 264, 269 (4th Cir.2002); *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 556–57 (6th Cir.1998) (en banc); *Saltarelli v. Bob Baker Group Med. Trust*, 35 F.3d 382, 386 (9th Cir. 1994). We construe ambiguities against the drafter and in favor of the beneficiary. *Masella*, 936 F.2d at 107. The interpretation chosen by the insurer must be "the only construction which may fairly be placed on [the words]." *Vargas v. Ins. Co. of N. Am.*, 651 F.2d 838, 840 (2d Cir.1981) (internal quotation and citation omitted); *accord Seaboard Surety Co. v. The Gillette Co.*, 64 N.Y.2d 304, 486 N.Y.S.2d 873, 476 N.E.2d 272, 275 (N.Y.1984); *Sincoff v. Liberty Mut. Fire Ins. Co.*, 11 N.Y.2d 386, 230 N.Y.S.2d 13, 183 N.E.2d 899, 901 (1962).

The Defendants argue that there was "no business purpose" for Irene's drive home. They echo the magistrate judge in arguing that there was no business purpose for Irene Lifson's homeward journey unless she had actually received a page. We think that this claim depends on an unduly narrow view of what an insured might reasonably identify as a business purpose.

Terms similar to those used in the plan have a long and difficult interpretive history. The Supreme Court half a century ago described a similar phrase, "arising out of and in the course of the employment," as "the fruitful (or fruitless) source of a mass of decisions turning upon nice distinctions and supported by refinements so subtle as to leave the mind of the reader in a maze of confusion." *Cardillo v. Liberty Mut. Ins. Co.*, 330 U.S. 469, 479 n. 4, 67 S.Ct. 801, 91 L.Ed. 1028 (1947) (internal quotation omitted). Similarly, the Third Circuit has held, and we agree, that "on ... business" is "open-ended" and "not self-clarifying," so that it must be construed against an insurer. *McMillan v. State Mut. Life Assurance Co. of Am.*, 922 F.2d 1073, 1075–76 (3d Cir.1990).

Thus, we think a reasonable finder of fact could have concluded that Irene Lifson's journey home was "on business ... and in the course of ... business" simply because it benefitted the economic interests of her employer. *See Hartford Ins. Co. of Southeast v. Occidental Fire & Cas. Co. of N.C.*, 908 F.2d 235, 239 (7th Cir. 1990); *Conn. Indem. Co. v. Stringfellow*, 956 F.Supp. 553, 558–59 (M.D.Pa.1997) (summarizing cases); *cf. Allen v. Cont'l Cas. Co.*, 280 Or. 631, 572 P.2d 617, 619 (1977) (holding that on-call security guard was covered under insurance policy requiring him to be "on the business of the [employer]," where, among other factors, the employer benefitted from the arrangement by reducing the number of guards who had actually to be on duty). There was testimony that the on-call system allowed MONY to reduce the number of paid staff it had to employ. MONY evaluated their employees based on the time the employees took to respond to pages. While it was possible that Irene could have responded to a page from anywhere within the range of the paging system, by going home, she was also going to her personal computer, which was the tool she used for carrying out her work assignments while away from the office. Therefore, by going home, Irene was going to a location where

she could respond swiftly to pages. A reasonable fact-finder could conclude that MONY encouraged and benefitted from this behavior.

Even if we were to accept the magistrate judge's view that, in order for Irene Lifson to have been "on business ... and in the course of ... business," there would have had to have been "actual indication that [Irene] would perform work tasks at home on that evening," we think the record amply supported such a conclusion. There was overwhelming and uncontradicted evidence that Irene was expected to be, and would have been, paged repeatedly the evening of February 29. First, she was on call for two different sets of systems. The first, the so-called "specialized" system in which she was expert, typically generated from zero to three or four calls per week, or about "50% of the time." Irene was on call for the specialized system every three to four weeks. On February 29, 2000, she was also on call for the so-called "general" system, which generated two to ten calls per week. Purely as a matter of averages, Irene could have been expected to receive a fraction more than one call that evening. In addition, though, as all of witnesses testified, MONY was expecting trouble with its systems on February 29, 2000, because that night was an "exception on top of an exception": it was a leap day in a year that usually did not have a leap day. A MONY vice president testified that she expected some activity that night as a result. As it turned out, there were actually calls on seven different computer problems. Since Irene Lifson did not have the "team laptop," the only place she could respond to pages was at home. Therefore, a reasonable fact-finder could easily conclude that at the time of her accident, Irene was en route to the place where she and her employer expected her to, and where she in fact would have done, work for MONY.

■ While we have some doubt as to whether a reasonable insured would understand the policy language in light of New York caselaw interpreting similar *statutory* phrases, we believe such law also strongly favors the Plaintiff. An employee who can show either that they were to carry out "a specific work assignment for the employer's benefit at the end of the particular homeward trip," or that they engage in "so regular a pattern of work at home that the home achieves the status of a place of employment," is within "the course of ... employment" under New York's worker's compensation statute, even if injured while driving home. *Fine v. S.M.C. Microsystems Corp.*, 75 N.Y.2d 912, 554 N.Y.S.2d 827, 553 N.E.2d 1337, 1338–39 (1990). As we have said, we think it plain that a reasonable finder of fact could conclude that Irene Lifson was traveling home in order to carry out "a specific work assignment for the employer's benefit at the end of the particular homeward trip." The magistrate judge noted that there was not much evidence that Irene worked regularly at home. But that is probative only of the second branch of New York's dual purpose test; a claimant satisfies the test by meeting "either" requirement. *Id.* at 1339.

■ The Defendants argue that Irene did not necessarily have to go home in order to perform her work duties. That is, because she had not yet actually been paged, she was not required to go home. Therefore, she would not have gone home if not for personal reasons, taking her trip out of the "dual purposes" exception. A reasonable fact-finder, however, could conclude that Irene had ample business reasons to travel to her home even in advance of an actual page. Again, it was quite

likely she would be paged; she could answer pages swiftly from her home; she was evaluated based on the timeliness of her responses; and it advantaged MONY to have pages answered quickly. *See Martin v. Hasbrouck Heights Bldg. Loan & Sav. Ass'n*, 132 N.J.L. 569, 41 A.2d 898, 900 (1945) (holding, in applying "dual purpose" test borrowed from New York, that it was irrelevant that the claimant could have made his business appointments somewhere other than his home office); *Egloff v. Ob-Gyn Assocs. of N. N.Y.*, 245 A.D.2d 965, 667 N.Y.S.2d 116, 117 (1997) (holding that a doctor who was traveling to the hospital simply to be on call, and not in response to a page, was in the course of business, even though she was not required to be in any particular location while on call); *Donnell v. Waccabuc Country Club*, 29 A.D.2d 1022, 289 N.Y.S.2d 534, 535–36 (1968) (holding that lifeguard on call was in course of employment, because she was in a position to return quickly to work and employer benefitted from her availability); *cf. Neacosia v. N.Y. Power Auth.*, 85 N.Y.2d 471, 626 N.Y.S.2d 44, 649 N.E.2d 1188, 1191–92 (1995) (synthesizing cases, and concluding that "an employee who engages in a work-related errand while travelling [sic] between work and home, and is injured during that trip, sustains injuries that arise out of and in the course of his or her employment if the employer both encouraged the errand and obtained a benefit from the employee's performance of the errand").

Accordingly, we cannot agree that summary judgment in favor of the Defendants could properly be based upon the "on business . . . and in the course of . . . business" language of the Plan. As we noted earlier, the District Court did not consider other grounds raised by the Defendants in support of their motion, such as the policy's "commuting" exclusion, and the question whether Irene's travel was "authorized." The District Court is free to do so on remand.

Therefore, for the reasons stated above, the judgment of the District Court is hereby Vacated and Remanded for further proceedings consistent with this Opinion.