Matter of Matter v Google Inc. (2024 NY Slip Op 04646)

Matter of Matter v Google Inc.

2024 NY Slip Op 04646

Decided on September 26, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:September 26, 2024

CV-23-0719
[*1]In the Matter of the Claim of Bruce A. Matter, Respondent,
v
Google Inc. et al., Appellants. Workers' Compensation Board, Respondent.

Calendar Date:September 9, 2024

Before:Clark, J.P., Pritzker, Ceresia, Fisher and Mackey, JJ.

Lois Law Firm LLC, New York City (Addison O'Donnell of counsel), for appellants.
Fine, Olin & Anderman, LLP, New York City (Vincent J. Rossillo of counsel), for Bruce A. Matter, respondent.
Letitia James, Attorney General, New York City (Alison Kent-Friedman of counsel), for Workers' Compensation Board, respondent.

Clark, J.P.
Appeal from a decision of the Workers' Compensation Board, filed April 12, 2023, which, among other things, ruled that claimant sustained an accidental injury arising out of and in the course of his employment.
Claimant, an account executive for the employer in New York City, sustained serious injuries — including a traumatic brain injury — in October 2021 when he was struck by two motorized bicycles while crossing a street enroute to a bus stop. On the evening in question, claimant had attended an invitation-only event denominated as a "SADA & Google Cloud — Happy Hour" at a local biergarten for the "Google Cloud NYC team."[FN1] Claimant was injured after he left the event, while attempting to locate a bus stop for the particular bus that he usually took home on the days he worked from Google's local offices.
The employer and its workers' compensation carrier (hereinafter collectively referred to as the carrier) controverted claimant's subsequent claim for benefits contending, among other things, that claimant's accident did not arise out of and in the course of his employment. In response, claimant contended that his injuries were compensable under either the special errand or dual-purpose doctrines. Following hearings, a Workers' Compensation Law Judge agreed with the carrier and disallowed the claim. Upon claimant's application for administrative review, the Workers' Compensation Board reversed, finding that "the employer exercised a degree of control sufficient to find a causal nexus at the time of the accident." In so doing, the Board noted that "claimant was acting in furtherance of the employer's business" at the time of the accident and that the change in environment and corresponding search for the appropriate bus stop "caused a greater risk of injury during a trip that was necessary to carry out a function of claimant's employment." This appeal by the carrier ensued.
"In order for an injury to be compensable under the Workers' Compensation Law, it must arise both out of and in the course of employment" (Matter of Dent v Amazon.com Servs., Inc., 225 AD3d 1075, 1075 [3d Dept 2024] [internal quotation marks and citations omitted]; see Matter of Johnson v New York City Tr. Auth., 182 AD3d 970, 971 [3d Dept 2020]). "Generally, accidents that occur outside of work hours and in public areas away from the workplace are not compensable" (Matter of Holness v City Coll., 192 AD3d 1291, 1921 [3d Dept 2021] [internal quotation marks and citations omitted]; see Matter of Espinoza v City Safety Compliance Corp., 220 AD3d 1033, 1034 [3d Dept 2023]). Various exceptions to this rule exist, including, as relevant here, "where there is a causal nexus between the accident and the employment" (Matter of Engle v Reale Constr. Co., Inc., 15 AD3d 761, 762 [3d Dept 2005] [internal quotation marks and citation omitted]; see generally Matter of Neacosia v New York Power Auth., 85 NY2d 471, 476-478 [1995]). "The test for determining whether specific activities are within [*2]the scope of employment or purely personal is whether the activities are both reasonable and sufficiently work related under the circumstances" (Matter of Neacosia v New York Power Auth., 85 NY2d at 476 [citations omitted]; see Matter of Capraro v Matrix Absence Mgt., 187 AD3d 1395, 1396 [3d Dept 2020]), and relevant considerations include, among other things, the nature of the claimant's off-premises travel, whether the employer derives a benefit therefrom (see Matter of Neacosia v New York Power Auth., 85 NY2d at 476; Matter of Burlingame v Mobil Chem. Co., Div. of Mobil Oil Corp., 61 AD2d 273, 274-275 [3d Dept 1978]) and "[t]he degree of control exercised by the employer at the time of the accident" (Matter of Engle v Reale Constr. Co., Inc., 15 AD3d at 762).
On the night in question, claimant walked to the happy hour event from the employer's local offices. Approximately two hours later, and after feeling that he "had accomplished everything [he] needed to in terms of who [he] need[ed] to meet with," claimant decided to leave. After realizing that he was "not really near" the bus stop that he usually utilized near his office, claimant began walking, asked for directions and eventually encountered a security guard who pointed out the appropriate bus stop. As claimant crossed the street to reach the bus stop, he was struck by two motorized bicycles and sustained serious injuries.
With respect to the event itself, claimant testified that attending the SADA and Google Cloud happy hour, which had been placed on "everyone's calendar" by one of the employer's managers, was not only encouraged but was "absolutely, [100%]" part of his job requirements. As claimant explained, sessions and events such as the happy hour were "an integral part" of his duties as an account executive, and building positive working relationships with the employer's business partners was "the only way" he and his coworkers could "sell anything." According to claimant, the employer "track[ed] every dollar [of] revenue that [the employer] co-produce[d] with [its business partners]," and the amount of time and effort he expended in building these relationships impacted the metrics utilized to evaluate his performance. During such events, claimant testified, he would spend most of his time talking with the relevant business partner — in this case, SADA — but would "also spend time talking to the [the employer's] management that is responsible for the [particular] business partner[ ]" in order to "make sure that [he got] connected to the right person." Although the employer's representative testified that employees were not required to participate in events such as the subject happy hour, he acknowledged that attendance at business partner events was "encouraged." Indeed, the employer's representative explained that the purpose of such events was to develop and maintain business relationships between the employer's sales team and its business partners, which, in turn, allowed the [*3]employer and its partners to better understand the different strategies that they should pursue in order to make sales.
Based upon the foregoing, we are satisfied that the Board's finding of a causal nexus between the accident and claimant's employment is supported by substantial evidence. Despite the informal nature of the happy hour, it is readily apparent that the employer derived a benefit from claimant's participation in the event (see e.g. Baughman v Merchants Mut. Ins. Co., 87 NY2d 589, 594 [1996]; Matter of Dziedzic v Orchard Park Cent. School Dist., 283 AD2d 878, 878-879 [3d Dept 2001]; Matter of Nazario v New York State Dept. of Correction, 86 AD2d 914, 915 [3d Dept 1982]) — specifically, developing and maintaining business relationships that, in turn, ultimately generated increased sales and revenues for the employer. The record further supports the Board's finding that claimant's attendance at this work-related event "altered the usual geographical or temporal scheme of travel, thereby altering the risks to which [he was] usually exposed" (Matter of Waters v New York City Tr. Auth., 204 AD3d 1208, 1209 [3d Dept 2022] [internal quotation marks and citations omitted]; accord Matter of Serrata v Suffolk County Police Dept., 216 AD3d 1333, 1334 [3d Dept 2023]). Accordingly, the Board's decision is affirmed. The carrier's remaining arguments, to the extent not specifically addressed, have been examined and found to be lacking in merit.
Pritzker, Ceresia, Fisher and Mackey, JJ., concur.
ORDERED that the decision is affirmed, with costs to claimant.

Footnotes

Footnote 1: SADA is described as a business partner of Google Cloud that works with customers to assist them in implementing Google Cloud solutions.