20-1807(L)
*Massaro v. Palladino*

# United States Court of Appeals
# For the Second Circuit

August Term 2020

Argued:  May 26, 2021
Decided: November 30, 2021

Nos. 20-1807(L), 20-2005(XAP), 20-3221(XAP)

ANGELO MASSARO, DOUGLAS MAY, in their
capacities as Employer Trustees of the
Laborers' International Union of North
America, Local No. 91 Pension Fund and
Welfare Fund, JAMES PANEPINTO, in his
capacity as putative Employer Trustee of the
Laborers' International Union of North
America, Local No. 91 Pension Fund and
Welfare Fund,

*Plaintiffs-Appellees-Cross-Appellants*,

*v.*

RICHARD PALLADINO, MARIO NERI, RANDY
PALLADINO, in their capacities as Union
Trustees of the Laborers' International Union
of North America, Local No. 91 Pension Fund
and Welfare Fund,

*Defendants-Appellants-Cross-Appellees*.[*]

---

[*] The Clerk of Court is respectfully directed to amend the caption as set forth above.

Appeal from the United States District Court
for the Western District of New York
No. 19-cv-890, John L. Sinatra, Jr., *Judge*.

Before: KEARSE, LYNCH, and SULLIVAN, *Circuit Judges*.

These consolidated appeals involve a dispute among the trustees of two multiemployer pension plans over whether the plans' union-appointed trustees (the "Union Trustees") violated their fiduciary duties under Section 404(a)(1)(D) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1104(a)(1)(D), when they amended the trust agreements governing the plans by a simple majority vote. The United States District Court for the Western District of New York (Sinatra, *J.*) granted summary judgment in favor of the plans' employer-appointed trustees (the "Employer Trustees"), finding that the trust agreements themselves required that such amendments be passed by unanimous consent. Notwithstanding its conclusion that the Union Trustees had breached their fiduciary duties to the plans in violation of ERISA, the district court nevertheless denied the Employer Trustees' request for attorneys' fees. Moreover, when the Employer Trustees moved to hold the Union Trustees in contempt for continuing to enforce the invalid amendments to the trust agreements, the district court denied the motion, finding that its summary judgment order was not sufficiently clear and unambiguous to support a contempt finding.

The Union Trustees appeal from the district court's grant of summary judgment in favor of the Employer Trustees, and the Employer Trustees cross-appeal from the district court's denial of attorneys' fees and appeal from the denial of their contempt motion. Although we agree with the district court that, under the terms of the trust agreements, the Union Trustees' amendments were required to be passed by a unanimous vote, we nevertheless conclude that the district court erred in granting summary judgment to the Employer Trustees because the Union Trustees were not acting in a fiduciary capacity when they passed those amendments. Accordingly, we VACATE the district court's grant of summary judgment, DISMISS the Employer Trustees' cross-appeal and appeals as moot, and REMAND for further proceedings.

JOSHUA S. GLASGOW (Alan J. Bozer, James D. Donathen, Kyle Tanzer, *on the briefs*), Phillips Lytle LLP, Buffalo, New York, *for Plaintiffs-Appellees-Cross-Appellants*.

EDWARD J. MEEHAN (James V. Cole II, Kalena R. Kettering, Meredith F. Kimelblatt, *on the reply brief*), Groom Law Group, Chartered, Washington, DC; (Robert L. Boreanaz, Joseph L. Guza, *on the opening brief*), Lipsitz Green Scime Cambria, Buffalo, NY, *for Defendants-Appellants-Cross-Appellees*.

RICHARD J. SULLIVAN, *Circuit Judge*:

This case concerns an acrimonious dispute between the trustees tasked with managing two employee benefit plans on behalf of the Laborers' International Union of North America, Local Union No. 91. Like many plans established for union workers under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, the two plans here – one a pension fund and the other a welfare fund (collectively, the "Funds") – provided for the selection of two sets of trustees: one from the union and the other from the multiple employers who made contributions into the plans. The Employer Trustees (Angelo Massaro, Douglas May, and James Panepinto) commenced this action in the United States District Court for the Western District of New York, alleging that the Union Trustees (Richard Palladino, Mario Neri, and Randy Palladino) breached their fiduciary

3

duties under ERISA when they passed, by simple majority, two amendments to the trust agreements governing the Funds (the "Trust Agreements"). The district court (John L. Sinatra, Jr., *J.*) granted summary judgment in favor of the Employer Trustees, concluding that the Union Trustees had breached their fiduciary duties under Section 404(a)(1)(D) of ERISA, 29 U.S.C. § 1104(a)(1)(D), because – under the terms of the Trust Agreements – the amendments were required to be passed by a unanimous vote of the Trustees.

We agree with the district court's construction of the Trust Agreements and its conclusion that the Union Trustees' purported amendments were procedurally invalid. Nevertheless, under this Court's and the Supreme Court's precedent, we conclude that the Union Trustees did not breach their fiduciary duties in passing the invalid amendments, because trustees do not act in a fiduciary capacity under ERISA when they pass amendments to a multiemployer benefit plan. In light of the narrow grounds on which the district court granted summary judgment in favor of the Employer Trustees, we therefore vacate the district court's judgment and remand for further proceedings consistent with this Opinion.

# I. BACKGROUND

## A. Facts

### 1. The Funds and Governing Trust Agreements

The Funds at issue in this case are "multiemployer plans" under ERISA, meaning that they are maintained pursuant to a collective bargaining agreement and provide retirement and welfare benefits to the employees of contributing employers. *See* 29 U.S.C. § 1002(37); *Trs. of the Loc. 138 Pension Tr. Fund v. F.W. Honerkamp Co.*, 692 F.3d 127, 129 (2d Cir. 2012). Here, the Funds provide benefits to employees in and around Niagara County, New York, who work primarily in the construction industry.

Multiemployer plans like the Funds are often referred to as "Taft-Hartley" plans because they are established and maintained "pursuant to Section 302(c) of the Taft-Hartley Act of 1947 (otherwise known as the Labor Management Relations Act [or LMRA])." *32BJ N. Pension Fund v. Nutrition Mgmt. Servs. Co.*, 935 F.3d 93, 96 n.3 (2d Cir. 2019) (citing 29 U.S.C. § 186(c)). Under Section 302(c)(5)(B) of the LMRA, such plans must be "jointly administered by an equal number of employer and union trustees." *Textile Workers Pension Fund v. Std. Dye & Finishing Co.*, 725 F.2d 843, 846 (2d Cir. 1984). "This equal representation requirement

provides an important safeguard against trust fund corruption by preventing any misuse of those funds by union officers who would otherwise have sole control over vast amounts of money contributed by the employer." *Int'l Bhd. of Teamsters, Joint Council 18 v. N.Y. State Teamsters Council Health & Hosp. Fund*, 903 F.2d 919, 922 (2d Cir. 1990) (internal quotation marks and alterations omitted).

In line with these requirements under the LMRA, and consistent with ERISA's mandate that all employee benefit plans (including multiemployer plans) "be established and maintained pursuant to a written instrument," 29 U.S.C. § 1102(a)(1), the Funds are governed by two effectively identical agreements that set forth requirements for the composition of the Funds, management of the Funds, and appointment of Fund Trustees. Both Trust Agreements provide that "[t]he operation and administration of the Fund[s] will be the responsibility of a Board of Trustees, composed of six [] Trustees, three [] of whom will be Employer Trustees, designated and appointed by [participating] Employers, and three [] of whom will be Union Trustees, designated and appointed by the" Laborers' International Union of North America, Local Union No. 91. J. App'x at 407, 430.

Prior to 2019, Article III, Section 3 of both Trust Agreements provided in relevant part:

6

***Section 3. Appointment and Removal of Trustees.*** One Employer Trustee will be appointed by each employer group signatory to Local 91 in the following manner: the Building Industry Employers Association of Niagara County, New York will appoint one Trustee, the Council of Utility Contractors Inc. will appoint one Trustee, and the Associated General Contractors of America New York State Chapter, Inc. will appoint one Trustee. The Union shall appoint three [] Union Trustees. The Trustees selected from their respective Employer groups and Union must have first-hand knowledge of investment strategies for the Fund, coupled with the capability to represent their employer group to advance the investment and prosperity needed for this Fund. . . .

Trustees representing their respective Employer groups will be appointed by each employer group's own procedures. Any Employer Trustee may be removed from office at any time for any reason by the Employer Group that appointed him or her in the same fashion. Trustees representing the Union will be appointed by the Union, according to its own procedures. A Union Trustee may be removed from office at any time, for any reason, by the Union. . . .

*Id.* at 408, 431.

Article X, Section 1 of the pre-2019 version of both Trust Agreements established the following procedure for amending those Agreements:

***Section 1. Amendment by Trustees.*** The provisions of this Trust Agreement may be amended to any extent and at any time by a document in writing adopted by a majority of all of the Trustees. However, a decision of the Board of Trustees that would change (i) the total number of Trustees, or (ii) the manner in which Trustees are appointed as required in Article III, Section 3, above, will require a unanimous vote. . . .

7

*Id.* at 423, 446.[1]

### 2. The 2019 Amendments to the Trust Agreements

On January 9, 2019, the Board of Trustees for the Funds convened for a board meeting. At that time, the three designated Union Trustees were Richard Palladino, Mario Neri, and Randy Palladino. The three designated Employer Trustees were Douglas May (representing the Associated General Contractors of America, New York State Chapter), Angelo Massaro (representing the Building Industry Employers' Association of Niagara County), and Anthony Majka (representing the Council of Utility Contractors, Inc.).

At the board meeting, Union Trustee Richard Palladino introduced two identical amendments to Article III, Section 3 of the Trust Agreements (the "Amendments"). The Amendments added additional qualifications for Employer and Union Trustees and created a procedure by which Trustees who did not meet those requirements could petition the existing Board of Trustees to be seated only by unanimous approval. Employer Trustee Anthony Majka seconded Palladino's motion to introduce the Amendments, which put the Amendments to a vote.

---

[1] The same language requiring unanimity for certain amendments also appears in Article IV, Section 5 of both Trust Agreements, entitled "Decisions and Deadlocks." *See* J. App'x at 411, 433–34.

8

Thereafter, two of the three Employer Trustees, Angelo Massaro and Douglas May, voted against the Amendments, while Majka and all three Union Trustees voted in their favor.[2] The January 9, 2019 board meeting minutes thus reflected that the Amendments "pass[ed]" by a "4-2" vote. *Id.* at 283.

The parties dispute the reasons for introducing these Amendments. The Employer Trustees contend that the Amendments were passed primarily for the purpose of making it more difficult for the Council of Utility Contractors to remove Anthony Majka as its appointed Employer Trustee. According to the Employer Trustees, in December 2018, the Council advised Majka that it intended to replace him with a new Trustee. The Employer Trustees contend that Majka met the new qualifications imposed by the Amendments, while his intended replacement did not. The Union Trustees, by contrast, deny any impropriety in the Amendments, claiming that their purpose simply "was to ensure that prospective individuals serving as Trustees had a vested interest in the Funds and their continued viability and success." Suppl. App'x at 68.

---

[2] While Union Trustee Mario Neri was not present at the meeting, the final versions of the Amendments indicate that Funds Administrator William Grace voted for Neri by proxy. *See* J. App'x at 401, 403.

9

Whatever the reasons for introducing them, the Amendments changed

Article III, Section 3 of the Trust Agreements to read as follows (with new language

bolded and underlined):

> *Section 3.   Appointment and Removal of Trustees.*   One Employer Trustee will be appointed by each **E**mployer **G**roup signatory to Local 91 in the following manner:  the Building Industry Employers Association of Niagara County, New York will appoint one Trustee, the Council of Utility Contractors Inc. will appoint one Trustee, and the Associated General Contractors of America New York State Chapter, Inc. will appoint one Trustee.  The Union shall appoint three [] Union Trustees.  The Trustees selected from their respective Employer groups and Union must have first-hand knowledge of investment strategies for the Fund, coupled with the capability to represent **the Union** or their **E**mployer **G**roup to advance the investment and prosperity needed for this Fund.  **Additionally, each Union Trustee appointed must have contributions on his/her behalf to the Laborers' Local No. 91 Pension Fund for at least ten (10) years.  Additionally, each Employer Trustee must be the owner, officer or employee of a contractor that is [a] signatory to Laborers' Local No. 91 with headquarters located within the geographical jurisdiction of Local 91 and have contributed to the Pension Fund for the previous consecutive five [] years.** . . .

> Trustees representing their respective Employer groups will be appointed by each employer group's own procedures.  Any Employer Trustee may be removed from office at any time for any reason by the Employer Group that appointed him or her in the same fashion.  Trustees representing the Union will be appointed by the Union, according to its own procedures.  A Union Trustee may be removed from office at any time, for any reason, by the Union. . . .

> **If a Trustee nominee by the Union or Employers does not meet the above qualifications, he or she may petition the existing**

**Board of Trustees and be seated as a new Trustee only by unanimous vote.**

J. App'x at 400–03.

Following the purported passage of the Amendments, the Council of Utility Contractors removed Anthony Majka as its appointed Employer Trustee. At the next board meeting on April 3, 2019, James Panepinto appeared as the putative Employer Trustee representing the Council. The Union Trustees objected to the seating of Panepinto as an Employer Trustee because he did not meet the qualifications for Employer Trustees added in the Amendments. At the following board meeting on October 2, 2019, the Union Trustees again stated that they would not permit Panepinto to be seated because he did not meet the qualifications listed in the Amendments.

## B. Procedural History

### 1. The Employer Trustees' Amended Complaint

On October 31, 2019, the Employer Trustees filed their operative complaint in the district court, seeking to invalidate the Amendments and enjoin the Union Trustees from continuing to object to the seating of James Panepinto as Anthony Majka's successor as Employer Trustee. The Employer Trustees asserted several different theories of liability against the Union Trustees.

11

In their first claim, the Employer Trustees alleged that the Union Trustees violated their fiduciary duties under ERISA by (1) passing the Amendments in contravention of the amendment procedures enumerated in the Trust Agreements; (2) undermining the rights of employer groups to appoint Trustees of their choosing; and (3) failing to recognize James Panepinto as a validly appointed Employer Trustee. Specifically, the Employer Trustees alleged that the Union Trustees did not comply with Article X, Section 1 of the Trust Agreements – in violation of their fiduciary duties under Section 404(a)(1)(D) of ERISA – since Article X required "a unanimous vote of the Trustees to change the manner in which Trustees are appointed under Article III, Section 3." *Id.* at 28 ¶ 55.[3] Because the Amendments changed the "manner" in which Employer Trustees were appointed, and because they were passed by a bare majority vote, the Employer Trustees claimed that the Union Trustees breached their fiduciary duties by violating the terms of the Trust Agreements.

---

[3] While the amended complaint cited the amendment procedures in Article IV, Section 5 of the Trust Agreements, *see* J. App'x at 21 ¶ 19, at summary judgment, the parties instead relied on the identical language appearing in Article X, Section 1. *See id.* at 48; Suppl. App'x at 65. Because the district court similarly relied on Article X, Section 1 in granting summary judgment, *see* Sp. App'x at 2, we do so as well in this Opinion.

In their second and third claims, the Employer Trustees asserted alternative grounds for relief. Specifically, they alleged that the Union Trustees also (1) breached their fiduciary duties under a separate provision of ERISA by *enforcing* the Amendments; and (2) violated Section 302(c)(5) of the LMRA because the Amendments made it practically impossible for the Funds to comply with the LMRA's "equal representation" requirement going forward by ruling out nearly all potential Employer Trustee candidates.

The Employer Trustees requested three forms of relief on all of their claims. First, they sought a declaratory judgment deeming the Amendments null and void. Second, they sought an injunction (1) directing the Union Trustees to seat James Panepinto as a validly appointed Employer Trustee, (2) prohibiting the Union Trustees from enforcing the Amendments, and (3) barring the Union Trustees from "otherwise interfering with the Employer Trustees in carrying out their statutory duties imposed by ERISA and the LMRA." *Id.* at 33. And third, the Employer Trustees sought attorneys' fees under Section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g)(1).

## 2. The District Court's Text Order and Summary Judgment Decision

After limited discovery, the Employer Trustees moved for a preliminary injunction or, in the alternative, for summary judgment. On March 26, 2020, the district court entered an order (the "Text Order") stating that it "intend[ed] to rule for [the Employer Trustees] as a matter of law." J. App'x at 10. The court explained that it "view[ed] the central issue to be whether the [A]mendments . . . change[d] 'the manner' in which [T]rustees 'are appointed' in Article III, Section 3" of the Trust Agreements. *Id.* The district court concluded that "[b]y adding new, objective qualifications and a procedure to police them, the purported [A]mendment[s] indeed change[d] the manner of [T]rustee appointment." *Id.* The Text Order therefore indicated that the district court would hold that "unanimity [was] required" to pass the Amendments. *Id.*

In the Text Order, the court requested supplemental briefing on, among other things, "the most straightforward approach for the [c]ourt to take to resolve the summary judgment motion, given the [c]ourt's stated intention" to rule for the Employer Trustees. *Id.* In response, the Employer Trustees wrote that granting summary judgment on their breach of fiduciary duty claim under ERISA § 404(a)(1)(D) would "resolve[] the core issue in this litigation," and so there was

14

"no need for the [c]ourt to reach the merits of" the Employer Trustees' alternative theories of liability. *Id.* at 460.

As previewed in the Text Order, on May 13, 2020, the district court issued a decision (the "Summary Judgment Order") granting summary judgment in favor of the Employer Trustees solely on their breach of fiduciary duty claim under ERISA § 404(a)(1)(D). The district court explained that the plain and unambiguous language of Article X, Section 1 of the Trust Agreements required unanimity for any "decision of the Board of Trustees that would change . . . the manner in which Trustees are appointed as required in Article III, Section 3." Sp. App'x at 7–8 (internal quotation marks omitted). The court then concluded that the Amendments "do[] in fact, 'change' the 'manner' of Trustee appointment" because the "new, objective" qualifications for Trustees, and "the policing procedures by which a non-qualifying nominee can petition the Board of Trustees to be seated . . . by unanimous vote, are intertwined with the appointment process." *Id.* at 8. Accordingly, since the Union Trustees passed the Amendments by a majority vote rather than by the unanimous vote required by Article X, Section 1, the district court held that the Union Trustees breached their fiduciary duties under ERISA § 404(a)(1)(D) by failing to comply with the terms of the Trust Agreements.

Consistent with the Employer Trustees' proposed resolution of the case, the district court also concluded that "there [was] no need for the [c]ourt to reach" the Employer Trustees' alternative theories of liability. *Id.* at 6 n.3 (internal quotation marks omitted).

After resolving the merits of the Employer Trustees' breach of fiduciary duty claim, the district court addressed the Employer Trustees' request for attorneys' fees under ERISA § 502(g)(1). Without further elaboration, the court held that, "because [the Union Trustees'] arguments on the merits were colorable and nonfrivolous," the Employer Trustees' request for attorneys' fees and costs against the Union Trustees was denied. *Id.* at 10.

At the end of the Summary Judgement Order, the district court summarized its rulings and stated that it (1) "granted summary judgment" to the Employer Trustees "on their [f]irst [c]laim for [b]reach of [f]iduciary [d]uties in violation of Section 404(a)(1)(D) of ERISA"; (2) denied the Employer Trustees' "application for a preliminary injunction . . . as moot"; (3) denied the Employer Trustees' request for attorneys' fees and costs; and (4) denied an outstanding discovery request "as moot." *Id.* at 11. The district court then "directed [the Clerk of Court] to close the case." *Id.*

16

Following entry of the district court's Summary Judgment Order and the issuance of the Clerk's judgment, the Union Trustees filed a timely notice of appeal challenging the district court's grant of summary judgment in favor of the Employer Trustees. The Employer Trustees, in turn, timely cross-appealed from "all portions of the [Summary Judgment] Order that denied [their] request for attorneys' fees and costs." J. App'x at 477.

### 3. Contempt Proceedings

On July 27, 2020, the Employer Trustees filed a motion in the district court (the "Contempt Motion") requesting an order to show cause as to why the Union Trustees should not be held in contempt for failing to comply with the district court's Summary Judgment Order and accompanying judgment. In essence, the Employer Trustees asserted that the Union Trustees had flouted the district court's Summary Judgment Order and had continued to block the seating of Employer Trustees who did not comply with the new qualifications imposed by the 2019 Amendments. According to the Employer Trustees, shortly after the district court's Summary Judgment Order, James Panepinto resigned and was replaced by James Logan as the new appointed Employer Trustee for the Council of Utility Contractors. Notwithstanding the district court's Summary Judgment Order, the

17

Union Trustees – just as they had done with Panepinto – refused to seat Logan as Trustee.

In responding to the Contempt Motion, the Union Trustees largely did not dispute the Employer Trustees' factual allegations. Instead, they claimed that (1) in declining to seat Logan, the Union Trustees were simply attempting to enforce the qualifications for Trustees in the Trust Agreements that *predated* the 2019 Amendments; and (2) the district court had not issued any "clear and unambiguous" order requiring that the Union Trustees recognize Logan as a valid Employer Trustee. Suppl. App'x at 365. Accordingly, the Employer Trustees argued that contempt sanctions were not warranted.

On September 16, 2020, the district court held a telephonic hearing at which it orally denied the Employer Trustees' Contempt Motion (the "Contempt Decision"). In denying the motion, the district court essentially agreed with the Union Trustees' argument that the district court's Summary Judgment Order was not sufficiently clear and unambiguous to support a contempt finding. Specifically, the district court pointed to "footnote three" of the Summary Judgment Order, which denied the Employer Trustees' request for an injunction directing the Union Trustees to seat the Council of Utility Contractors' appointed

18

Trustee. *See id.* at 500 ("[T]he most dispositive fact for me . . . [is that] footnote three does deny injunctive relief, as requested in paragraph 56 [of the complaint]."). As a result, the district court held that its Summary Judgment Order did not "clear[ly] and unambiguous[ly]" require the Union Trustees to seat either Panepinto or his successor Trustee, Logan, and that the Employer Trustees' Contempt Motion was therefore denied. *Id.* at 499–500.

The Employer Trustees filed a timely notice of appeal from the district court's Contempt Decision.[4] In addition to appealing the denial of their Contempt Motion, the Employer Trustees claimed that the Contempt Decision "change[d] matters of substance, or resolve[d] a genuine ambiguity" in the district court's Summary Judgment Order and accompanying judgment. *Id.* at 502. Thus, the Employer Trustees also appealed from the Summary Judgment Order and accompanying judgment, "as changed or clarified by" the Contempt Decision. *Id.*

### 4. Proceedings on Appeal

The parties' various appeals and cross-appeals were consolidated, such that the following challenges to the district court's decisions are now before this Court:

---

[4] In fact, the Employer Trustees appealed from the district court's September 16, 2020 text order, which denied the Employer Trustees' Contempt Motion and stated that "[t]he court transcript" from September 16, 2020 "will constitute the written decision." Suppl. App'x 17, 502.

(1) the Union Trustees' appeal from the district court's grant of summary judgment in favor of the Employer Trustees (in No. 20-1807); (2) the Employer Trustees' cross-appeal from the district court's denial of attorneys' fees (in No. 20-2005); (3) the Employer Trustees' appeal from the district court's denial of their Contempt Motion (in No. 20-3221); and (4) the Employer Trustees' appeal from the district court's denial of injunctive relief in its Summary Judgment Order, as "clarified" by the Contempt Decision (also in No. 20-3221).[5]

---

[5] Before this Court, the Union Trustees have also filed motions (1) to dismiss the Employer Trustees' injunctive relief and contempt appeals (No. 20-3221) for lack of jurisdiction; and (2) to dismiss James Panepinto and Douglas May as parties (apparently in all of the consolidated appeals) for lack of appellate standing. Those motions are all DENIED. As discussed below, *see* Section II.D., *infra*, we dismiss both of the Employer Trustees' appeals in No. 20-3221 as moot, so the Union Trustees' motion to dismiss for lack of jurisdiction is also moot – as are their motions to dismiss Panepinto and May as appellants in No. 20-3221. To the extent that the Union Trustees seek to dismiss Panepinto and May as *appellees* in No. 20-1807, their argument is without merit. Although May is no longer an Employer Trustee and Panepinto no longer seeks to be seated as an Employer Trustee, both of them have a sufficiently "direct stake in the outcome" of No. 20-1807 to justify their status as appellees. *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 64 (1997) (internal quotation marks omitted). The district court's grant of summary judgment in their favor was a precondition of their request for attorneys' fees under ERISA – a request that the district court ultimately denied. Accordingly, Panepinto and May have a vested interest in defending the district court's grant of summary judgment so that they may seek the attorneys' fees to which they claim they were entitled. Similarly, we also reject the Union Trustees' motion to dismiss Panepinto and May as cross-appellants in No. 20-2005, since both of them plainly "retain[] a stake in the appeal" of the denial of attorneys' fees. *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 334 & n.6 (1980); *cf. also Iroquois Master Fund, Ltd. v. Quantum Fuel Sys. Techs. Worldwide, Inc.*, 641 F. App'x 24, 25 (2d Cir. 2016) (concluding that plaintiff had appellate standing "because the district court's final judgment caused [the plaintiff] injury when [the court] awarded [it] damages in an amount less than the amount [it] argued it was entitled to").

20

## II. DISCUSSION

### A. Appellate Jurisdiction over the Summary Judgment Appeal

Before addressing the merits of the district court's Summary Judgment Order, we must first determine that we have jurisdiction over the Union Trustees' appeal from that decision. Although neither party challenges this Court's appellate jurisdiction, "we are obliged to raise the issue of our jurisdiction *nostra sponte* 'when it is questionable.'" *NAACP v. Merrill*, 939 F.3d 470, 474 (2d Cir. 2019) (quoting *Henrietta D. v. Giuliani*, 246 F.3d 176, 179 (2d Cir. 2001)).

"In the federal system, parties may appeal ordinarily only from 'final decisions of the district courts.'" *Palmieri v. Defaria*, 88 F.3d 136, 139 (2d Cir. 1996) (quoting 28 U.S.C. § 1291). A decision is "final" for the purposes of 28 U.S.C. § 1291 if it "ends the litigation on the merits and leaves nothing for the [district] court to do but execute the judgment." *Leftridge v. Conn. State Trooper Officer No. 1283*, 640 F.3d 62, 66 (2d Cir. 2011) (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945)).

Because an order granting *partial* summary judgment in favor of one party necessarily leaves some of the party's claims unresolved, such an order is ordinarily "interlocutory" and unappealable under § 1291. *See In re Chateaugay Corp.*, 922 F.2d 86, 90–91 (2d Cir. 1990). This Court has also concluded, however,

21

that a decision is final when the district court "clearly intends to close the case, *i.e.*, to enter a final judgment."  *Ellender v. Schweiker*, 781 F.2d 314, 318 (2d Cir. 1986); *see also Vona v. County of Niagara*, 119 F.3d 201, 206 (2d Cir. 1997) (holding order was appealable because the district court marked the case "closed," indicating that it intended its order to be a final judgment).  Thus, in a case in which the parties and the district court all "understood the . . . judgment to be the final decision on the merits as to all of the claims raised by the [plaintiffs]," we found an order to be final and appealable under § 1291 even though "two [of the parties'] claims may have" remained pending after the district court entered judgment.  *Guggenheim Cap., LLC v. Birnbaum*, 722 F.3d 444, 449–50 (2d Cir. 2013).  We emphasized that such an approach was consistent with the Supreme Court's guidance that we "give a 'practical rather than a technical construction' to section 1291."  *Id.* at 450 (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949)).

We reach the same conclusion here that we reached in *Guggeinheim Capital*. While the district court's Summary Judgment Order and accompanying judgment did not resolve the Employer Trustees' alternative theories of liability seeking the same relief, there can be no doubt that the Employer Trustees, the Union Trustees, and the district court all "understood the . . . judgment to be the final decision on

22

the merits as to all of the claims raised by the" Employer Trustees. *Id.* As in *Guggenheim Capital*, the district court "terminated all outstanding motions and ordered the case closed." *Id.* And, most importantly, there was nothing left for the district court to decide that would have affected the respective positions of the parties; it granted the Employer Trustees all declaratory relief sought, denied permanent injunctive relief, and denied their request for attorneys' fees. *See* Sp. App'x at 6 n.3, 7–8, 10. Thus, for all practical purposes, there was "nothing for the [district] court to do but execute the judgment." *Leftridge*, 640 F.3d at 66 (internal quotation marks omitted); *see also Hamm v. Ameriquest Mortg. Co.*, 506 F.3d 525, 527 (7th Cir. 2007) (observing that "a plaintiff can win only once, and so it does not matter how many other theories are left on the table if the claim itself has been resolved").

Accordingly, under the facts and circumstances of this case, we conclude that the district court's decision granting summary judgment was "final" for the purposes of 28 U.S.C. § 1291.

## B. The District Court's Interpretation of the Trust Agreements

We review a district court's grant of summary judgment *de novo*, "examining the evidence in the light most favorable to, and drawing all [reasonable] inferences

23

in favor of, the non-movant." *Sullivan-Mestecky v. Verizon Commc'ns Inc.*, 961 F.3d 91, 97 (2d Cir. 2020) (internal quotation marks omitted). We likewise "subject the determination that an ERISA plan provision is unambiguous to *de novo* review," *Aramony v. United Way Replacement Benefit Plan*, 191 F.3d 140, 149 (2d Cir. 1999); and on such review, the "unambiguous language in an ERISA plan must be interpreted and enforced according to its plain meaning," *Connors v. Conn. General Life Ins. Co.*, 272 F.3d 127, 137 (2d Cir. 2001) (internal quotation marks omitted).

"ERISA is a comprehensive statutory scheme regulating employee retirement plans." *F.W. Honerkamp*, 692 F.3d at 128. As relevant here, Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), "authorizes a participant, beneficiary, or fiduciary of an employee benefit plan to bring a civil action to obtain appropriate equitable relief to redress violations of ERISA Subchapter I, including . . . fiduciary breaches." *Sullivan-Mestecky*, 961 F.3d at 98–99 (internal quotation marks omitted). One of the provisions of ERISA that may be enforced through Section 502(a)(3) is Section 404(a), which imposes several fiduciary duties on benefit plan trustees and administrators. *See* 29 U.S.C. § 1104(a).

Here, the Employer Trustees alleged that the Union Trustees violated their fiduciary duties under Section 404(a)(1)(D) of ERISA, which provides that "a

24

fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . in accordance with the documents and instruments governing the plan . . . ." *Id.* § 1104(a)(1)–(a)(1)(D). Section 404(a)(1)(D) therefore requires trustees of plans governed by ERISA "to administer the plan in accordance with plan documents." *Ganton Techs., Inc. v. Nat'l Indus. Grp. Pension Plan*, 76 F.3d 462, 466 (2d Cir. 1996). And, pursuant to Section 502(a)(3), a "participant, beneficiary, or fiduciary" of the plan may bring a civil action to enforce this fiduciary duty and bring fiduciaries into compliance with the governing plan documents. 29 U.S.C. § 1132(a)–(a)(3).

Faced with this statutory framework, the district court assumed that the Union Trustees acted in a fiduciary capacity when they passed the 2019 Amendments to the Trust Agreements, and it proceeded to analyze whether the Amendments complied with the terms of the Trust Agreements. As we explain below, this was error; the Union Trustees did not act in a fiduciary capacity when they passed the Amendments, so they did not violate Section 404(a)(1)(D) of ERISA by passing those Amendments – even if they might have violated a separate provision of ERISA. *See* Section II.C., *infra.* Nevertheless, we agree with the

25

district court's construction of the Trust Agreements and its conclusion that the Union Trustees failed to comply with the terms of Article X, Section 1.

"ERISA plans are construed according to federal common law." *Fay v. Oxford Health Plan*, 287 F.3d 96, 104 (2d Cir. 2002). "ERISA federal common law is largely informed by state law principles," however, so "[w]e apply familiar rules of contract interpretation in reading an ERISA plan." *Lifson v. INA Life Ins. Co. of N.Y.*, 333 F.3d 349, 352–53 (2d Cir. 2003). Not surprisingly, then, we "review [an ERISA] [p]lan as a whole, giving terms their plain meanings." *Fay*, 287 F.3d at 104. This means interpreting language "in an ordinary and popular sense as would a person of average intelligence and experience," *Critchlow v. First UNUM Life Ins. Co. of Am.*, 378 F.3d 246, 256 (2d Cir. 2004) (internal quotation marks omitted), including by reference to the dictionary definitions of terms, *see, e.g.*, *Celardo v. GNY Auto. Dealers Health & Welfare Tr.*, 318 F.3d 142, 146–47 (2d Cir. 2003).

As the district court correctly recognized, the central question of contract interpretation at issue in this case is whether the Union Trustees' "decision" to pass the January 9, 2019 Amendments to the Trust Agreements "change[d] . . . the manner in which Trustees are appointed as required in Article III, Section 3." Sp. App'x at 8 (internal quotation marks omitted). If so, under the plain terms of

26

Article X, Section 1, it "require[d] a unanimous vote," J. App'x at 423, 446, rather than the simple majority vote that took place.

Although the Trust Agreements do not define the term "manner" as used in Article X, Section 1, the ordinary meaning of the term is hardly complicated: it is the means or procedures by which some action is taken. *See, e.g.*, *Oxford English Dictionary* (Online ed. 2021) (defining "manner" as "[t]he way in which something occurs or is performed; a method of action; a mode of procedure"), oed.com/view/Entry/113569; *Black's Law Dictionary* 1152 (11th ed. 2019) (defining "manner of service" as "[t]he way or means by which service of process was made"). The phrase "manner in which Trustees are appointed as required in Article III, Section 3" is therefore best understood as the means or procedures by which Trustees are appointed, as set out in Article III, Section 3.

Giving the term "manner" its ordinary meaning, we have little difficulty concluding that the Amendments changed the "manner" of Trustee appointment under Article III, Section 3. Critically, the 2019 Amendments added the following language (the "Petition Provision") to the end of Article III, Section 3: "If a Trustee nominee by the Union or Employers does not meet the above qualifications, he or she may petition the existing Board of Trustees and be seated as a new Trustee

27

only by unanimous vote." J. App'x at 401, 403. Under the original language of Article III, Section 3, Trustees were simply appointed by the Union or the participating employers according to each group's "own procedures." *Id.* at 408, 431. There were no other requirements or criteria that a Trustee had to satisfy, and under no circumstances was a Trustee compelled to seek unanimous approval from the Board of Trustees before being seated. Under the Petition Provision of the Amendments, however, some prospective Trustees face an additional procedural hurdle: if they "do[] not meet the . . . qualifications" listed in Article III, Section 3, *every* existing member of the Board of Trustees must agree to their appointment. *Id.* at 401, 403.

Apparently recognizing the problematic nature of the Petition Provision, the Union Trustees argue that the Petition Provision, "to the extent it required a unanimous vote, should have been invalidated [by the district court] while leaving the remaining provisions of the Amendment[s] intact." Union Trs. Br. at 12. But this argument mistakenly conflates the Petition Provision *itself* with the "decision" to pass the Amendments containing that Petition Provision. Under Article X, Section 1 of the Trust Agreements, any "*decision of the Board of Trustees* that would change . . . the manner in which Trustees are appointed" under Article III, Section

28

3 requires a unanimous vote. J. App'x at 423, 446 (emphasis added). The Petition Provision – like the rest of the language added by the Amendments – purportedly went into effect through a single, non-unanimous "decision" of the Board of Trustees on January 9, 2019: the vote initiated by Richard Palladino and seconded by Anthony Majka. Thus, it is not the substance of the Petition Provision that conflicts with Article X, Section 1, such that excising that provision would bring the Union Trustees into compliance with the Trust Agreements; it is the manner in which that Petition Provision was passed that was procedurally improper.

In sum, looking to the terms of the Trust Agreements alone, we agree with the district court's conclusion that the Union Trustees failed to comply with those Agreements. The plain and unambiguous text of Article X, Section 1 required that the "decision" to pass the Amendments – which added a new manner of appointing Trustees under Article III, Section 3 – receive a "unanimous vote." And because the Amendments were instead enacted by a bare "4-2" vote of the existing Trustees, *see id.* at 283, that decision was invalid under the terms of the Trust Agreements.

**C.    The Union Trustees Did Not Act in a Fiduciary Capacity When They Passed the Amendments**

Given our agreement with the district court's conclusion that the Union Trustees violated the unambiguous terms of the Trust Agreements, one might reasonably expect that the Employer Trustees should succeed on their breach of fiduciary duty claim. After all, Section 404(a)(1)(D) of ERISA states that "a fiduciary shall discharge his duties with respect to a plan solely . . . in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)–(a)(1)(D). But under our precedents and the precedents of the Supreme Court, it is not enough to show that a trustee (or other plan administrator) violated one of the provisions of the plan; a plaintiff must also show that the trustee was *acting in a fiduciary capacity* when he or she took the challenged action. Because we conclude that the Union Trustees did not act in a fiduciary capacity when they passed the challenged Amendments, we are obliged to vacate the district court's decision granting summary judgment in favor of the Employer Trustees.

As the Supreme Court has instructed, "[i]n every case charging breach of ERISA fiduciary duty, . . . the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting *as a fiduciary* (that is, was

30

performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000) (emphasis added). This rule emerges from the principle that "trustee[s] under ERISA . . . wear different hats," but ERISA requires "that the fiduciary with two hats wear only one at a time, and wear the fiduciary hat when making fiduciary decisions." *Id.* at 225.

The two "hats" relevant to this appeal are "fiduciary" and "settlor." Section 3(21)(A) of ERISA states that "a person is a fiduciary" for the purposes of ERISA "to the extent . . . he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A). By contrast, a trustee or other plan administrator acts as a "settlor" when he "makes a decision regarding the *form or structure* of the [p]lan such as who is entitled to receive [p]lan benefits and in what amounts, or how such benefits are calculated." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444 (1999) (emphasis added).

In line with this distinction, the Supreme Court explained in *Lockheed Corp. v. Spink*, 517 U.S. 882 (1996), that plan sponsors (that is, individuals who govern an employee benefit plan subject to ERISA) act in a settlor, rather than fiduciary, capacity when they "alter the terms of a plan." *Id.* at 890. Accordingly,

the Court held that "the act of amending a pension plan does not trigger ERISA's fiduciary provisions." *Id.* at 891.

*Lockheed* involved the specific context of a single-employer pension plan, but in *Hughes Aircraft Co. v. Jacobson*, the Supreme Court made clear that *Lockheed*'s reasoning "applies with equal force to persons exercising authority over a contributory plan, a noncontributory plan, or any other type of plan." 525 U.S. at 443–44. In *Hughes Aircraft*, the Ninth Circuit had attempted to distinguish *Lockheed* based on the structure of the plan at issue, *see id.* at 437, but the Supreme Court rejected such an interpretation of ERISA "for the simple reason that the plain language of the statute defining fiduciary makes no [such] distinction," *id.* at 444. The Court therefore held that the three fiduciary duty claims brought in that case were "directly foreclosed by [*Lockheed*'s] holding that, without exception, plan sponsors who alter the terms of a plan do not fall into the category of fiduciaries." *Id.* at 445 (internal quotation marks and alterations omitted).

In *Janese v. Fay*, 692 F.3d 221 (2d Cir. 2012), we extended the reasoning of *Lockheed* and *Hughes Aircraft* to amendments to multiemployer benefit plans like the Funds involved in this appeal. The primary issue in *Janese* was "whether trustees of a multi-employer pension fund act as fiduciaries when they amend the

32

pension plan." *Id.* at 223. In cases that predated *Lockheed* and *Hughes Aircraft*, we had distinguished between amendments to single- and multiemployer benefit plans, concluding that trustees acted in a fiduciary capacity when they amended the latter. *See id.* at 225. In *Janese*, however, we held that this distinction was no longer tenable after *Lockheed* and *Hughes Aircraft* – particularly in light of *Hughes Aircraft*'s pronouncement that "without exception, plan sponsors who alter the terms of a plan do not fall into the category of fiduciaries." *Id.* at 226 (quoting *Hughes Aircraft*, 525 U.S. at 445) (internal quotation marks and alterations omitted).[6] Accordingly, *Janese* concluded that the plaintiffs' claims in that case, which were premised on the amendment of a multiemployer plan, "were subject to dismissal because the [d]efendants were not acting as fiduciaries when they amended the plans." *Id.* at 227.

---

[6] The Employer Trustees contend that *Janese* "recognized that the general rule regarding amendment as a settlor function applies 'in the absence of compelling reasons to the contrary.'" Empl. Trs. Br. at 41 (quoting *Janese*, 692 F.3d at 227). But this argument takes language from *Janese* entirely out of context. *Janese* did not state an exception to its general rule "for compelling reasons." Rather, we stated that we had identified no "compelling reasons" for "*maintaining a circuit split* on the issue of trustee liability as fiduciaries for amending multi-employer plans." *Janese*, 692 F.3d at 227 (emphasis added). *Janese* therefore eliminated the circuit split between this Court and other courts of appeals that had applied the reasoning of *Lockheed* and *Hughes Aircraft* to multiemployer plans. But nothing in *Janese* establishes the carve-out articulated by the Employer Trustees.

*Janese* squarely applies to the facts of this case, and it demonstrates that the district court erred by granting summary judgment in favor of the Employer Trustees. The Employer Trustees' core theory since the outset of this litigation has been that the Union Trustees breached their fiduciary duties when they passed the Amendments to the Trust Agreements on January 9, 2019. Indeed, the first claim of the Employer Trustees' amended complaint expressly alleges that the Union Trustees "breached the[ir] fiduciary duties owed to the Funds and its participants by sponsoring and 'passing' the purported January 9, 2019 [A]mendment[s] to Article III, Section 3 of the Trust Agreements without a unanimous vote, all in contravention of the Trust Agreements governing the Funds." J. App'x at 28 ¶ 52. Moreover, the provision of the Trust Agreements that the Union Trustees allegedly violated, Article X, is entitled "Amendment to Trust Agreement" and pertains solely to the power of Trustees to make amendments to the Agreements. *Id.* at 423, 446 (capitalization altered). Since both parties agree that the Funds qualify as multiemployer benefit plans within the meaning of ERISA, *Janese* forecloses the Employer Trustees' breach of fiduciary duty claim premised on the passage of the Amendments: the Union Trustees "were not acting as fiduciaries when they

34

amended the plans." *Janese*, 692 F.3d at 227. Each of the Employer Trustees'

arguments to the contrary is unpersuasive.

First, the Employer Trustees argue that, despite *Janese*'s seemingly

unqualified holding, passage of a *procedurally invalid* amendment cannot be

characterized as a settlor function. In support of that proposition, they cite the

Supreme Court's decision in *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73

(1995), which analyzed ERISA's requirement under Section 402(b)(3) that a plan's

governing documents establish a procedure for amending the plan. *See id.* at 82

(citing 29 U.S.C. § 1102(b)). In *Curtiss-Wright*, the Supreme Court recognized that

Section 402(b)(3) "enables plan administrators . . . to have a mechanism for sorting

out . . . the bona fide amendments [to a plan] from those that are not." *Id.* The

Court then stated that, "[i]n fact, plan administrators may have a statutory

responsibility to do this sorting out," citing the key ERISA fiduciary duty

provision at issue in this case: Section 404(a)(1)(D). *See id.* (citing 29 U.S.C.

§ 1104(a)(1)(D)). The Employer Trustees rely on this dictum from *Curtiss-Wright*

to argue that there is something unique about procedurally inadequate

amendments to plans. They claim that, even if passing *valid* plan amendments is

not a fiduciary function in light of *Janese*, trustees are not exempt from their

35

fiduciary duties to police *invalid* amendments that violate a plan's governing documents under Section 404(a)(1)(D) of ERISA.

While this argument has some surface appeal, it ignores the fact that *Curtiss-Wright* was not a breach of fiduciary duty case. Rather, *Curtiss-Wright* analyzed Section 402(b)(3) of ERISA and said nothing about the primary issue in this appeal (and in *Janese*), which is whether trustees act in a fiduciary capacity when they pass plan amendments. *Lockheed* and *Hughes Aircraft*, on the other hand, postdate *Curtiss-Wright* and are squarely on point. Both of those cases involve claims brought to enforce ERISA's breach of fiduciary provisions, and both held that plan administrators do not act in a fiduciary capacity when passing amendments to the plans, making no exceptions for allegedly invalid amendments. *See Hughes Aircraft*, 525 U.S. at 444–45; *Lockheed*, 517 U.S. at 891. Moreover, one of the plaintiffs' claims in *Hughes Aircraft* alleged that the amendment at issue was inconsistent with the terms of the plan, in violation of ERISA Section 404(a)(1)(D) – the same provision the Employer Trustees invoke in their complaint. *See Hughes Aircraft*, 525 U.S. at 437 (explaining that the plaintiffs alleged that "amending the [p]lan . . . to fund a program outside of the [p]lan's purposes violated § 404(a)(1)(D)"). Notably, this made no difference in the Supreme Court's analysis.

The Court made no distinction between the specific fiduciary duty provisions that the defendants were alleged to have violated; it simply stated that "[e]ach of [the plaintiffs'] fiduciary duty claims must fail because ERISA's fiduciary provisions are inapplicable to the amendments." *Id.* at 443. Accordingly, notwithstanding the possibly ambiguous dictum in *Curtiss-Wright*, the Supreme Court's subsequent precedents firmly preclude any carve-out from the principle that "plan sponsors who alter the terms of a plan do not fall into the category of fiduciaries." *Id.* at 445 (internal quotation marks and alterations omitted).

Our decision in *Janese* similarly makes no distinction between breach of fiduciary duty claims premised on invalid, as opposed to valid, amendments. In fact, *Janese* cited with approval a case from the Northern District of New York, *Fuchs v. Allen*, *see Janese*, 692 F.3d at 227, which dismissed a breach of fiduciary duty claim based on a plan amendment despite the plaintiffs' allegation that the plan amendment was invalid. 363 F. Supp. 2d 407, 413 (N.D.N.Y. 2005). We therefore reject the Employer Trustees' argument that *invalid* plan amendments are somehow exempted from *Janese*'s general rule.

Next, the Employer Trustees contend that "the main conduct at issue here is not the Union Trustees' passage of [the] [A]mendment[s]" but "their *subsequent*

37

*enforcement* of [those] invalid [A]mendment[s] to block administration of the Funds." Empl. Trs. Br. at 38–39 (emphasis added). But while the Employer Trustees did assert this and other alternative theories of liability in their amended complaint, *see* J. App'x 28–30, the district court expressly declined to resolve the Employer Trustees' motion for summary judgment on these grounds. As the district court explained in its Summary Judgment Order, "[b]ecause the [c]ourt conclude[d] that [the Union Trustees] breached their fiduciary duties *by passing the [A]mendment[s] without [a] unanimous vote*," the court did not need to address the Employer Trustees' alternative theories. Sp. App'x at 6 n.3 (emphasis added). Indeed, the Employer Trustees assented to the district court's narrow summary judgment decision, agreeing that "there [was] no need for the [c]ourt to reach the merits of" their alternative theories of liability. J. App'x at 460. Thus, because of the district court's and the Employer Trustees' narrow framing of the issue, the only theory of breach of fiduciary duty at issue in this appeal is premised on the Union Trustees *passing* the Amendments on January 9, 2019 – a theory that is foreclosed by *Janese*.

Finally, the Employer Trustees argue that barring their breach of fiduciary duty claim under Section 404(a)(1)(D) would "create[] a loophole, where trustees

38

would be immune from ERISA violations so long as they were amending the plan." Empl. Trs. Br. at 42. But the situation is not nearly so dire. Just because plaintiffs cannot bring a *breach of fiduciary duty* claim based on a procedurally invalid amendment does not mean that they are powerless to enforce the amendment procedures set forth in a plan; they simply must do so based on some *other* provision of ERISA. ERISA's civil enforcement provision, Section 502(c)(3), states that a "participant, beneficiary, or fiduciary" may bring a civil action "to enjoin any act or practice which violates *any* provision" of ERISA Subchapter I. 29 U.S.C. § 1132(a)(3) (emphasis added). The Employer Trustees structured their complaint around ERISA's breach of fiduciary duty provisions – which, as we have explained, require showing that the Union Trustees acted in a fiduciary capacity when they took the challenged action. *See Janese*, 692 F.3d at 223. But the Employer Trustees could have invoked Section 502(c)(3) to enforce a *different* statutory obligation under ERISA that does not depend on fiduciary status – namely, Section 402(b)(3).

Section 402(b)(3) requires that every employee benefit plan subject to ERISA "provide a procedure for amending [the] plan, and for identifying the persons who have authority to amend the plan." 29 U.S.C. § 1102(b)(3). In *Curtiss-Wright*, the

39

Supreme Court interpreted this provision as creating the obligation not only to have a procedure for amending a plan in place, but also to *comply* with that procedure when amending a plan. The Supreme Court's decision itself focused primarily on whether the defendant's boilerplate amendment provision satisfied the requirements of Section 402(b)(3). *See Curtiss-Wright*, 514 U.S. at 75. But after resolving that question, the Court directed the Third Circuit on remand "to decide the question that ha[d] always been at the heart of [the] case: whether [the defendant's] valid amendment procedure . . . *was complied with* in [that] case." *Id.* at 85 (emphasis added). Since *Curtiss-Wright*, our sister circuits have similarly recognized that Section 402(b)(3) can serve as a vehicle to challenge procedurally invalid plan amendments. *See, e.g.*, *Overby v. Nat'l Ass'n of Letter Carriers*, 595 F.3d 1290, 1296–97 (D.C. Cir. 2010) (adopting the "near unanimous view of the other circuits that a failure to follow the amendment procedures of a plan invalidates an amendment" in an action to enforce Section 402(b)(3) of ERISA). Consequently, our decision today does not create a "loophole" giving trustees free rein to disregard the amendment procedures set forth in a plan. We simply hold that the specific theory the Employer Trustees asserted in their complaint – *i.e.*, alleging

40

that the Union Trustees breached their fiduciary duties under ERISA by *passing the Amendments* – is foreclosed by this Court's decision in *Janese*.[7]

In sum, we hold that the district court erred by granting summary judgment in favor of the Employer Trustees on their claim that the Union Trustees violated Section 404(a)(1)(D) of ERISA. Although we agree with the district court's ultimate conclusion that the Union Trustees failed to comply with the amendment procedures specified in Article X, Section 1 of the Trust Agreements, passing the procedurally invalid amendments was not a fiduciary function within the meaning of ERISA. In light of the district court's decision – with the Employer Trustees' encouragement – not to address any alternative theories of liability, we vacate the district court's judgment and remand for further proceedings.

## D. The Employer Trustees' Cross-Appeal and Appeals

Having vacated the district court's grant of summary judgment in favor of the Employer Trustees, we still must resolve (1) the Employer Trustees' cross-appeal of the district court's denial of attorneys' fees (in No. 20-2005); (2) the

---

[7] Of course, on remand, the Employer Trustees may seek leave to amend their complaint to add claims that do not depend on fiduciary status under ERISA, such as a claim to enforce Section 402(b)(3). We take no position on the propriety of such a motion, other than to note that Federal Rule of Civil Procedure 15(a)(2) expressly directs district courts to "freely give [such] leave when justice so requires."

41

Employer Trustees' appeal of the district court's denial of their Contempt Motion (in No. 20-3221); and (3) the Employer Trustees' appeal of the district court's denial of injunctive relief "as changed or clarified by" the district court's Contempt Decision (also in No. 20-3221).

As to the Employer Trustees' cross-appeal challenging the denial of attorneys' fees, the threshold issue a district court must consider when deciding whether to award attorneys' fees under ERISA is "whether a plaintiff has obtained some degree of success on the merits." *Donachie v. Liberty Life Assurance Co. of Bos.*, 745 F.3d 41, 46 (2d Cir. 2014) (citing *Hardt v. Reliance Std. Life Ins. Co.*, 560 U.S. 242, 255 (2010)). In light of our decision to vacate the district court's grant of summary judgment, the Employer Trustees can no longer claim "some degree of success on the merits," *id.* (internal quotation marks omitted), since there is no longer even a *decision* on the merits, let alone a successful one. Accordingly, we dismiss the Employer Trustees' cross-appeal of the denial of attorneys' fees as moot. Of course, either party may seek an award of attorneys' fees in the future, provided they attain some degree of success on the merits on remand.

We likewise dismiss each of the Employer Trustees' appeals in No. 20-3221. The district court's Contempt Decision is mooted by our vacatur of the underlying

42

order on which that decision was based. *See Heyman v. Kline*, 456 F.2d 123, 131 (2d Cir. 1972) ("[U]nlike convictions for criminal contempt, judgments of civil contempt fall when the order underlying them is vacated."); *see also Aurelius Cap. Partners, LP v. Republic of Arg.*, 379 F. App'x 74, 76 (2d Cir. 2010) ("In light of the vacation of the underlying orders . . . , the validity of the contempt determination is now moot."). And we need not decide whether the district court's Contempt Decision modified the scope of its Summary Judgment Order with respect to injunctive relief because we vacate the Summary Judgment Order and accompanying judgment in their entirety. The Employer Trustees' claim that the district court erred in denying permanent injunctive relief is therefore moot.[8]

## III. CONCLUSION

For the foregoing reasons, we **VACATE** the district court's grant of summary judgment in favor of the Employer Trustees, **DISMISS** the Employer Trustees' cross-appeal and appeals as moot, and **REMAND** for further proceedings consistent with this Opinion. The Union Trustees' pending motions are **DENIED** for the reasons set forth in this Opinion.

---

[8] As noted above, *see supra* note 5, because we dismiss each of the Employer Trustees' appeals in No. 20-3221 as moot, the Union Trustees' motion to dismiss those appeals for lack of jurisdiction is also denied as moot.

43